[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 928 
The appellant was convicted under Count II of a two count indictment for the capital felony of robbery when the victim was intentionally killed by the defendant. Punishment was fixed at death and, after a hearing on aggravating and mitigating circumstances, the trial judge sentenced the appellant to death.
A summary of the facts of the case are set out in the trial court's findings:
"FINDINGS OF FACT FROM THE TRIAL
 "On October 15, 1977, during the morning part of the day, the defendant, together with one Marty Deal (an indicted co-defendant) discussed the need for money. Co-defendant Deal, a former employee of a convenience store chain known as Ma-Jik Market, suggested a store located on Stadium Drive in Phenix City, Russell County, Alabama, as being an easy target for robbery. Deal had previously worked in this store and was familiar with its routine, location of stock, and personnel. Deal and Keller then left the Deal residence in Columbus, Georgia, and rode over to the suggested location, looked over the store together, and returned to the Deal residence in Columbus, Georgia. Another discussion was had between the two and plans were made to rob the store sometime before midnight of that date. Keller had stolen a .45 caliber automatic from a friend, and during the afternoon hours, the two defendants test fired the gun in a secluded area to be sure of its firing capability, since this was the weapon to be used during the robbery. In the early evening hours the two were riding around in Deal's car, a 1966 Ford Futura, maroon in color. They ran across a friend of Keller's named Robert A. Boyd, III (an indicted co-defendant). Boyd was informed of the proposed robbery and he said he wanted in on it. The three men then discussed details of how the robbery would be carried out. Essentially plans were to get the manager into the back stockroom and kill him in order to leave no witnesses, then take the money from the register. This would prevent any later identification. *Page 929 
 "The three men left Deal's home again, in Deal's car, with Deal driving. They arrived at the store around 11:00 P.M. on October 15, 1977, but had to wait for routine customers entering and leaving the store to clear. To avoid suspicion over their continued presence, they pretended the car was unable to start and pushed it around the parking area until customer traffic cleared. The State called a witness who observed this activity and later identified both Keller and Deal. Customer traffic cleared shortly before midnight and Deal entered the store with the .45 caliber automatic. He was unable to lure the manager into the stockroom, was unable to shoot him, and went outside. Boyd then entered to shoot the manager. He, too, could not do it and also went back outside. In the meantime Deal had gone back inside to the telephone and pretended to call for a wrecker or repair service for his car. Keller then entered the store with the .45 caliber automatic, fired one shot into the manager, which proved to be fatal, and told Deal to get the money. They left and returned to the Deal residence where they split the proceeds of $131.00. They learned later of a description to police of the three, plus a description of Deal's car. They took Deal's car on October 16, 1977, to a remote area in Stewart County, Georgia, and burned it in the futile hope of avoiding discovery that this car matched descriptions given to police by witnesses. On Monday, October 17, 1977, all three, together with Deal's wife, left Columbus, Georgia, to drive to Dallas, Texas. They remained one night in Dallas, discussed going to Canada, but returned instead to Columbus, Georgia. Arrest followed shortly from leads discovered through Deal's burned vehicle.
 "Defendant Deal testified for the State and jury was permitted to know of plea agreement entered into by him with the State, whereby in exchange for Deal's testimony, the State would reindict him on a charge of murder first degree under 1975 Code of Alabama, Title 13-1-70.
"FINDINGS OF FACT FROM SENTENCE HEARING
 "The defendant is a white male, aged 25 years. He was born with a cystic condition or growth just below his right jaw, which will persist during his entire life. He dropped out of high school during his junior year. Although he has never married, the defect has not hampered his social activities.
 "At this hearing co-defendant Boyd as well as Deal testified for the State. Boyd had entered into an agreement with the State identical to the one entered into by Deal. The co-defendants each now testified essentially as Deal testified at trial to a jury. Each confirmed that during discussion of robbery details in the early evening hours, Keller was insistent that the manager would be killed regardless because `dead men don't talk,' and it was necessary `to kill the man.' At the time of the robbery, neither Deal nor Boyd could shoot the manager and each came out of the store without firing. Keller took the gun from Boyd, entered the store with it, fired one shot into the manager, which proved fatal, while he was not even looking at Keller, nor was he given opportunity to back off and give the money to Keller in return for his life. In fact, the man died without even knowing he was being robbed.
 "Keller has a history of violence. During the summer and fall of 1977 he dated a woman who was separated from her husband, but who has now returned to him. Keller has tried to have the husband killed by trying to hire one man and persuade another to shoot him.
 "In July 1974, Keller and a companion tried to pick up two girls in Columbus, Georgia. The girls got in their car and locked it. The defendant tried to kick out the windows and doors. When others tried to come to the girls' aid, Keller and his friend beat them, got back in their car and tried to `run down' those who tried to offer assistance. Keller's father, in the bonding business, talked to the Muscogee County, Georgia, district attorney, and charges were reduced from aggravated *Page 930 
assault to simple assault with punishment at one year probation.
 "Three months earlier, in April 1974, a Columbus police officer at a Columbus night club had to call for assistance to arrest Keller and a friend. Keller was in the outside parking lot of the club swinging a six-foot logging chain at two cars and also at the owners who were trying to stop him. There was an attempt to take the arresting officer's gun. Fines were paid on disorderly charges and again the father intervened and the criminal damage charges were nolle prossed.
 "The Court, therefore finds that defendant Keller intentionally killed Arley C. Davis during a robbery and that such killing was willful, deliberate, premeditated, and malicious. He personally fired the fatal shot after his two accomplices were unable to do so. His was the part of the plan to kill the store manager, regardless of whether resistance to the robbery developed or not because `dead men don't talk.' This was as conscienceless and pitiless a crime as can be conceived. A cold-blooded killing was perpetrated solely to prevent possible identification by the victim of the three participants in the robbery.
 "The following aggravating circumstances are therefore found by the Court to support imposition of the death sentence:
 "1. That the capital felony of first degree murder was intentionally committed by Woodrow Wilson Keller, Jr., while he engaged in the robbery of his victim.
 "2. That the capital felony was especially heinous or hateful.
"The following mitigating circumstances are found:
"1. None.
 "IT IS, THEREFORE, ORDERED AND ADJUDGED BY THE COURT that no reason can be found to refuse to accept the death penalty and that such death sentence shall, therefore, be imposed upon jury verdict rendered."
 I
Appellant contends that the trial court committed reversible error in overruling his demurrer to Count II of the indictment in that such count failed to charge him with robbery as required in § 13-11-2 (a)(2), Code of Ala. 1975. The offense is described in that section as:
 "Robbery or attempts thereof when the victim is intentionally killed by the defendant;"
Count II of the indictment reads as follows:
 "The Grand Jury further charge that before the finding of this indictment, Woodrow Wilson Keller, Jr., did unlawfully, intentionally, and with malice aforethought kill Arley C. Davis by shooting him with a pistol while the said Woodrow Wilson Keller, Jr., was engaged in the commission of or in an attempt to commit a robbery of the said Arley C. Davis, to-wit: on October 15, 1977, during the nighttime, at a location known as Ma-Jik Market, Stadium Drive, Phenix City, Russell County, Alabama, the said Arley C. Davis, an unarmed attendant at said Ma-Jik Market, was shot with a pistol, in violation of Act Number 213, Section 2, Sub-section b; and Section 6, Sub-sections d and h (Act No. 213, Sections 2 (b), 6 (d) and 6 (h)) Acts of Alabama 1975 Regular Session, in that the said killing was committed while the said Woodrow Wilson Keller, Jr., was engaged or was an accomplice in the commission or (sic), or an attempt to commit robbery, and in that the said killing was especially heinous, atrocious or cruel."
Count II of the instant indictment is almost identical in its essential averments to Count III of the indictment in Evans v.State, Ala.Cr.App., 361 So.2d 654 (1977), affirmed, Ala.,361 So.2d 666 (1978). Justice Beatty's learned dissent to the contrary notwithstanding, the Alabama Supreme Court held the indictment in Evans to be valid, stating:
 ". . . We cannot agree that the indictments are insufficient or defective. Specifically, we cannot agree with the dissent that the State must allege in the indictment that the defendant was engaged *Page 931 
in robbery and, while robbing, the victim was intentionally killed, but that the State cannot allege that the victim was intentionally killed while defendant was engaged in robbing him. We think either allegation sufficiently apprises the defendant of that with which he is charged. To adopt any other rationale would, we think, constitute a rather narrow construction, neither called for, nor required, in our judgment, by our statutory rules of construction."
Therefore, pursuant to the Alabama Supreme Court decision inEvans, we find Count II of the instant indictment to be valid.
The appellant likewise contends that the verdict of the jury was improper in that it did not find him guilty of robbery or an attempt thereof when the victim is intentionally killed by the defendant. The verdict was:
 "We, the jury, find the defendant guilty of intentionally killing Arley C. Davis while engaged in a robbery of Arley C. Davis and fix his punishment at death."
Here we find no material variance between the indictment and the verdict. The same rationale used by the Alabama Supreme Court in Evans, supra, would apply to a verdict phrased in substantially the same terminology as the indictment. That is, to state that the defendant intentionally killed the victim while robbing him means the same as stating that while robbing the victim the defendant intentionally killed him. The instant case and Evans are distinguishable from the recent holdings inClements v. State, Ala., 370 So.2d 723 [1979] and Watters v.State, Ala., 369 So.2d 1272 [1979]. In both Clements andWatters, the indictments charged the offense of robbery when the victim was intentionally killed by the defendant. InClements, the jury returned a verdict of "guilty of firstdegree murder with aggravated circumstances." (Emphasis supplied.) In Watters, the verdict was "guilty of murder as charged in the indictment." In neither case was the verdict for a crime charged in the indictment, while in the instant case there is no variance between the indictment and the verdict.
 II
Appellant contends that the Alabama death penalty act is unconstitutional in violation of the Eighth and Fourteenth Amendments to the United States Constitution "in that it is a mandatory death sentence act which does not permit consideration by the jury of mitigating circumstances."
The Alabama death penalty statute, Act No. 213, Acts of Alabama 1975, approved September 9, 1975 (now codified as § 13-11-1 through § 13-11-9, Code of Ala. 1975) has been conclusively declared to be constitutional. Jacobs v. State, Ala.Cr.App., 361 So.2d 607 (1977), affirmed, Ala.,361 So.2d 640 (1978), cert. denied, 439 U.S. 1122, 99 S.Ct. 1034,59 L.Ed.2d 83 [1979].
 III
Appellant contends the trial court erred in excusing James Brindley from the jury because of his opposition to capital punishment. The colloquy resulting in Brindley's excusal is as follows:
 "THE COURT: Do you have reservations concerning the imposition of the death penalty?
"JAMES BRINDLEY: I sure do.
 "THE COURT: Would that opinion you hold, then, prevent you from an impartial consideration of guilt or innocence?
"JAMES BRINDLEY: No, I couldn't pass on guilt.
 "THE COURT: You hold such reservations that you could not return a verdict of guilty under any circumstances, regardless of the evidence presented to you? That's what I'm trying to get to.
 "JAMES BRINDLEY: If the death penalty is required, yes sir.
 "THE COURT: In such a case as I have described to you, where I mentioned robbery or attempted robbery and the victim is intentionally killed, you hold such reservations that even though you were convinced beyond a reasonable doubt of the *Page 932 
truth of the complaint against the defendant, you just couldn't impose it, you just couldn't impose it, it would prevent you from really making a determination of his guilt?
"JAMES BRINDLEY: Yes.
 "THE COURT: You could not make such a determination of guilt?
"JAMES BRINDLEY: (Shaking head in the negative.)
 "THE COURT: Now, would you go further and say that you would refuse to ever vote as a juror to impose the death penalty?
"JAMES BRINDLEY: (Nodding in the affirmative.)
 "THE COURT: Would you refuse, then, to even consider voting to impose the death penalty?
"JAMES BRINDLEY: (Nodding in the affirmative.)
 "THE COURT: You would refuse even to consider it, then?
"JAMES BRINDLEY: (Nodding in the affirmative.)
"THE COURT: All right, sir. What says the state?
 "MR. BENTON: The state asks that he be struck, your Honor.
 "THE COURT: The motion will be granted. You will be excused from the trial of this case. You would no longer need to respond to any questions."
Section 12-16-152, Code of Ala. 1975, provides:
 "On the trial for any offense which may be punished capitally or by imprisonment in the penitentiary, it is a good cause of challenge by the state that the person would refuse to impose the death penalty regardless of the evidence produced or has a fixed opinion against penitentiary punishment or thinks that a conviction should not be had on circumstantial evidence, which cause of challenge may be proved by the oath of the person or by other evidence."
The United States Supreme Court has held that unless a venireman is "irrevocably committed, before the trial has begun, to vote against the penalty of death, regardless of the facts and circumstances that might emerge in the course of the proceedings," he may not be excused. Witherspoon v. Illinois,391 U.S. 510, at 522 n. 21, 88 S.Ct. 1770, 1777, 20 L.Ed.2d 776
(1968); Davis v. Georgia, 429 U.S. 122, 97 S.Ct. 399,50 L.Ed.2d 339 (1976).
We believe the test set out in Witherspoon, supra, was fully met before the trial judge excused the venireman in question. The above quoted colloquy could hardly be any stronger to the effect that James Brindley was irrevocably committed prior to trial to vote against the death penalty regardless of the evidence presented. His excusal therefore was without error.
 IV
Appellant contends he was unconstitutionally subjected to an identification lineup without the presence of counsel. The record shows, and appellant concedes in brief, that the lineup was prior to indictment. Counsel for appellant likewise concedes in brief that United States v. Wade, 388 U.S. 218,87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) and Gilbert v. California,388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967) apply to the right to counsel at post indictment lineups. However, counsel argues in brief that, "since dangers which the Court pointed out as the reason for the rule [requiring counsel] would be equally, if not even more, applicable at this critical stage, this principle must be available in any lineup, particularly in a case such as ours where the appellant has been arrested and is being held without bond."
We fail to see the rationale that being held without bond gives rise to any greater need for counsel at a preindictment lineup. Unless modified by higher authority, we will continue to adhere to the current standard that it is unnecessary to require presence of counsel before "the initiation of adversary judicial criminal proceedings — whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877,32 L.Ed.2d 411 (1972); *Page 933 Moore v. Illinois, 434 U.S. 220, 98 S.Ct. 458, 54 L.Ed.2d 424
(1977). The lineup in the instant case was conducted after appellant's arrest but before the initiation of any adversary judicial criminal proceedings and thus appellant was not constitutionally entitled to counsel at that time.
 V
The appellant contends that the trial court committed reversible error by charging the jury that malice may be presumed from the use of a deadly weapon, thus improperly injecting the felony-murder doctrine into the case which reduced the State's burden of proof.
The appellant failed to reserve an exception to that portion of the trial court's oral charge dealing with a presumption of malice arising from the use of a deadly weapon. As stated by this court in Jacobs, supra, at 625:
 "It has been firmly established by both this Court and the Supreme Court of Alabama that in the absence of an exception to the Court's oral charge nothing is presented for review on appeal. The rule applies with equal force under our Automatic Appeal Statute in death cases. . . ." (Citations omitted.)
The same contention made by the appellant was made in theJacobs appeal concerning the presumption of malice lessening the State's burden of proof. In addition to pointing out that no proper exception to the court's oral charge had been made in that case, this court stated that "the court's oral charge to the jury on the presumption of malice from the use of a deadly weapon was correct in every respect."
 VI
At the end of the State's case in chief, counsel for the appellant filed a written motion to exclude the State's evidence setting forth the following grounds:
 "1. The State of Alabama has failed to prove the Defendant committed a robbery in violation of Act Number 213, Section 2, Subsection b (Act Number 213, Section 2 (b), Acts of Alabama 1975, Regular Session) and in violation of said Act Number 213, Section 2, Subsection b, and Section 6, Subsections d and h (Act Number 213, Section 2 (b), 6 (d) and 6 (h), Acts of Alabama 1975, Regular Session).
 "2. The State of Alabama has failed to prove that there were any taking or attempted taking by the Defendant, Woodrow Wilson Keller, Jr., of any property of the alleged victim, Arley C. Davis.
 "3. The State of Alabama has failed to prove that the Defendant, Woodrow Wilson Keller, Jr., feloniously took or attempted to take any property of the person or presence of the alleged victim, Arley C. Davis.
 "4. The State of Alabama has failed to prove that the Defendant, Woodrow Wilson Keller, Jr., feloniously took or attempted to take any property of any description or of any value of the alleged victim, Arley C. Davis, from his person or presence or against his will, by violence to his person or putting him in such fear as unwillingly to part with the same.
 "5. The State of Alabama has not shown that there was any taking or attempted taking by the Defendant of any property of any value from the person or presence of the alleged victim, Arley C. Davis.
 "6. The State of Alabama seeks, attempts or intended to charge the Defendant with robbery or attempt thereof when the victim is intentionally killed by the Defendant in violation of Act Number 213, Section 2, Subsection b (Act Number 213, Section 2 (b), Acts of Alabama 1975, Regular Session), and in violation of said Act Number 213, Section 2, Subsection b, and Section 6, Subsection d and h (Act Number 213, Sections 2 (b), 6 (d) and 6 (h), Acts of Alabama 1975, Regular Session); and said charge of robbery or attempt thereof is not set forth in code form in said indictment.
 "7. Said Act Number 213, Acts of Alabama 1975, Regular Session, punishes but does not define robbery or attempt thereof when the victim is intentionally killed by the Defendant, and hence, common law averments setting out the offense of *Page 934 
robbery or attempt thereof are not dispensed with, but instead are required.
 "8. Said indictment does not allege that the Defendant feloniously took or attempted to take any property of any description of any value of the alleged victim, Arley C. Davis, from his person or presence and against his will by violence to his person or placing him in such fear as unwillingly to part with the same.
 "9. The allegations of the indictment do not charge this Defendant with any offense under said Act Number 213, Section 2, Subsection b (Act Number 213, Section 2 (b), Acts of Alabama 1975, Regular Session).
 "10. The allegations of the indictment do not charge this Defendant with any offense under said Act Number 213, Section 2, Subsection b, and Section 6, Subsections d and h (Act Number 213, Section 2 (b), 6 (d) and 6 (h), Acts of Alabama 1975, Regular Session).
 "11. Section 2 of the said Act Number 213 of the Regular Session of the Alabama Legislature, 1975, states as follows:
 "`If the jury find the Defendant guilty they shall fix the punishment at death when the Defendant is charged by indictment with any of the following offenses and with aggravation which must also be averred in the indictment, and which offenses so charged with said aggravation shall not include any lesser offenses; . . .' (Emphasis supplied.)
 "Count II of said indictment charges this Defendant with murder in the first degree and not robbery when the victim is intentionally killed by the Defendant, as required by Section 2 (b), Acts of Alabama 1975, Regular Session, Act No. 213."
The matter covered in grounds 6 through 11 has been sufficiently covered in part I of this opinion, supra. Grounds 1 through 5 of the motion to exclude the State's evidence are to the effect that the State failed to prove that Woodrow Wilson Keller, Jr., the appellant, personally robbed, attempted to rob, or feloniously took or attempted to take any property from the victim.
According to the testimony of the appellant's accomplice, Marty Deal, after the appellant shot the victim, Deal went behind the counter and took the money from the cash register. It makes little difference whether the appellant took the money after shooting the victim or whether one of his accomplices took the money. The appellant, Deal and Boyd were all engaged in a conspiracy to not only rob the Ma-Jik Market, but also to kill the manager.
Section 13-9-1, Code of Ala. 1975 (formerly Title 14, § 14) states:
 "The distinction between an accessory before the fact and a principal, between principals in the first and second degrees, in cases of felony, is abolished; and all persons concerned in the commission of a felony, whether they directly commit the act constituting the offense or aid or abet in its commission, though not present, must hereafter be indicted, tried and punished as principals, as in the case of misdemeanors." (Emphasis supplied.)
The accomplice statute has been applied to all felonies, both capital and non-capital in the past. It has been applied to charge an accomplice as a principal likewise in cases where specific intent to commit a crime must be charged on the part of the principal. In order to convict an accomplice of a traditional murder charge pursuant to that statute, it has been necessary to show that the accomplice had a previous understanding to kill or injure the deceased, or had a knowledge of the intent to kill on the part of the co-defendant. In Jordan v. State, 81 Ala. 20, 1 So. 577 (1886), our Supreme Court stated:
 ". . . When a particular intent or formed design is requisite to constitute an offense, knowledge of its existence and a common purpose to perpetrate the offense must be shown before a person can be convicted of aiding and abetting. We so held on the former appeal. Jordan v. State, 79 Ala. 9; State v. Hildreth, 51 Amer.Dec. 369, and notes."
In Tanner v. State, 92 Ala. 1, 9 So. 613 (1890), the court stated: *Page 935 
 ". . . The accomplice, as we have seen, is criminally responsible for acts which are the direct, proximate, natural result of the conspiracy formed. He is not responsible for any special act, not within the scope of the common purpose, but grows out of the individual malice of the perpetrator. 1 Wharton Crim.Law, § 397."
It is the opinion of this court that the accomplice statute brings an aider and abettor within the purview of the capital felony statute. The capital felony statute allows the trial judge to consider as an aggravating circumstance that "the capital felony was committed while the defendant was engaged or an accomplice in the commission of, or an attempt to commit, or flight after committing, or attempting to commit rape, robbery, burglary, or kidnapping for ransom." It likewise allows a trial judge to consider as a mitigating circumstance the fact that "the defendant was an accomplice in the capital felony committed by another person, and his participation was relatively minor." Those references within the capital felony statute, coupled with § 13-9-1, supra, (the accomplice statute), convince this court that an accomplice may be tried, convicted and sentenced to death under the capital felony statute. The evidence would support a finding by the jury that the appellant intentionally killed the victim while the appellant was an accomplice in robbing, or attempting to rob the victim. In fact, Deal testified that the appellant told Deal to "get the money" immediately after appellant shot the victim. Then in the get-away car, on appellant's demand, Deal gave the proceeds of the robbery to the appellant.
 VII
Title 15, § 307, Code of Ala. 1940 (now § 12-21-222, Code of Ala. 1975) provides:
 "A conviction of felony cannot be had on the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the commission of the offense, and such corroborative evidence, if it merely shows the commission of the offense or the circumstances thereof, is not sufficient."
The proper test to determine if there was sufficient corroboration of the testimony of an accomplice is to first set aside the accomplice's testimony and then determine if other evidence of an inculpatory nature exists tending to connect the defendant with the commission of the offense. Sorrell v. State,249 Ala. 292, 31 So.2d 82 (1947); Lindhorst v. State, Ala.Cr.App., 346 So.2d 11, cert. denied, Ala., 346 So.2d 18
(1977). In the instant case, testimony from witnesses other than the accomplice established the robbery and killing of the victim. The date, location and approximate time of the offense were likewise established by such testimony. The State's witness, Henry Barber, placed the appellant at the scene of the crime on the date and within minutes of the discovery of the victim's body. He testified that he saw the appellant pushing a car at that time and place, and that Marty Deal was one of the men in the car.
Wendy Deal, the wife of Marty Deal, testified that on the night following the robbery the appellant admitted that he shot the victim. From the record:
 "Q. Did anybody ever tell you in Woodrow Keller's presence who shot Arley Davis?
"A. Yes.
 "MR. SMITH: Now, we object to any leading question like that. He can place the time and place.
"THE COURT: Overruled.
"Q. Where were you at when they told you, Wendy?
"A. At my home.
"Q. Who told you?
"A. Woodrow.
"Q. When did he tell you?
"A. Sunday night.
 "Q. Who did he say shot Arley Davis over there in the robbery?
"A. He said he did.
 "Q. Did you see any kind of weapons on that Saturday night whenever you say that they were all in your house — or Sunday night? I may have gotten the wrong night. Excuse me. *Page 936 
"A. He always wore that gun on his side at all times.
"Q. Who is `he?'
"A. Woodrow.
"Q. Do you know what kind of gun it was?
"A. A .45 caliber."
The fact that at or about the time of the commission of an offense with which an accused is charged, he and the accomplice were together, in or near the place where the crime was committed, may in conjunction with other facts and circumstances sufficiently tend to connect the accused with the commission of the crime to furnish the necessary corroboration of the accomplice. Lindhorst, supra, and cases cited therein. In the instant case, the appellant's presence with the accomplice at the scene of the crime on the date and approximate time of its commission was established by Barber and admitted in the appellant's own testimony. The appellant, however, contended that he did not know one of his companions had shot Davis. He testified that after he found out about the killing he fled to Texas with his companions and that they tried to destroy evidence because he was frightened. Such circumstances, coupled with the testimony of a non-accomplice, Wendy Deal, that the appellant admitted to her that he shot the victim is sufficient corroboration of the accomplice's testimony as a matter of law without going into other evidence or further detail. The credibility and weight to be accorded the testimony of the wife of accomplice Marty Deal was properly within the province of the jury.
 VIII
After the jury found the appellant guilty and fixed punishment at death, the trial court held a hearing to determine whether the appellant should be sentenced to death or to life imprisonment without parole, pursuant to § 13-11-3, Code of Ala. 1975. During the course of that hearing, evidence was taken concerning the prior criminal history of the appellant. Both hearsay testimony of police officers and "rap sheets" from the Columbus, Georgia, Municipal Court were introduced at that hearing. The trial judge related some of those incidents in his "Findings of Fact from Sentence Hearing" set out at the beginning of this opinion. The testimony and rap sheets introduced in evidence show that from one altercation involving the appellant on April 16, 1974, the police placed the following four charges against him: "drunk," "resisting arrest," "disorderly conduct," and "criminal damages." The record shows that on the first three charges, the appellant paid fines in municipal court of $17, $102 and $102, respectively. On the fourth charge, the appellant was bound over to "the State Court under a $500 bond." The record shows no disposition of that case.
The second altercation brought out in the hearing occurred in July 1974 and resulted in charges against the appellant of aggravated assault, striking a fixed object, reckless driving, and leaving the scene of an accident. The aggravated assault was reduced to simple battery, a misdemeanor, with the appellant being placed on twelve months probation. The remaining three charges show sentences in the municipal court of $32 or sixteen days, $250 or ninety days with suspension of driver's license, and $27 or twenty-seven days, respectively. A notation on the docket sheet seems to indicate those cases were nol-prossed in state court on October 31, 1974.
A criminal trespass charge dated September 30, 1977, was dismissed in municipal court. The other offenses listed on the rap sheet are traffic related, i.e. improper lights, speeding, "Red Light," and following too close. Those traffic offenses cover a period from February 1973 through May 1976. The record likewise shows a charge on November 4, 1972, for second degree "criminal damage" which was "no billed" fourteen days later.
The only aggravating circumstances which may be considered under the capital felony statute relating to a defendant's prior criminal history are set out in § 13-11-6 (2): "The defendant was previously convicted of another capital felony or a felony *Page 937 
involving the use or threat of violence to the person." The record in the instant case shows no prior felony convictions.
The trial court found two aggravating circumstances:
 "1. That the capital felony of first degree murder was intentionally committed by Woodrow Wilson Keller, Jr., while he engaged in the robbery of his victim.
 "2. That the capital felony was especially heinous or hateful."
The first aggravating circumstance describes the crime charged in the indictment and cannot be used as both the criminal charge and the circumstance aggravating that charge.Cook v. State, Ala., 369 So.2d 1251 [September 15, 1978, opinion corrected on rehearing, Ms. February 9, 1979].
A finding by the trial judge of only one aggravating circumstance is sufficient to sustain the death penalty. That the capital felony was especially heinous would be sufficient. That it was "hateful" is not an aggravating circumstance set out in the statute. We recommend that State v. Dixon, Fla.,283 So.2d 1 (1973) be studied by trial judges concerning definitions of "especially heinous, atrocious or cruel" before making such a finding. It is likewise imperative that trial courts in setting out aggravating circumstances follow as closely as possible the strict wording of § 13-11-6, supra. An inclination to gradually broaden the scope of aggravating circumstances beyond the strict wording of the statute will eventually lead to an unconstitutional application of the capital felony statute.
The Alabama Supreme Court in Cook, supra, stated:
 ". . . Cook's background presents even less of an admissible criminal history than the trial judge believed. At the hearing the trial judge improperly considered evidence of a pending robbery charge and in effect decided that case without benefit of a trial by jury. Of course, it could not seriously be contended that evidence could be presented of a prior acquittal even though the defendant had clearly escaped justice on the most technical of technicalities. Consequently, a pending charge cannot be considered either. Cook may well be convicted at some future date of this robbery, but then again he may not be convicted for any number of reasons. Until the State proves him guilty of this charge in accordance with appropriate legal procedures Cook is presumed innocent. This fundamental tenet of our system of justice prohibits use against an individual of unproven charges in this life or death situation."
Further, commenting on the trial judge's consideration of a 1972 charge against Cook for assault with intent to murder which was reduced to malicious destruction of property resulting in a $100 fine, the Supreme Court stated:
 ". . . the court must rely on the prior judge's decision that Cook's acts were most appropriately treated as malicious destruction of property. Once judgment is entered the original charges become irrelevant. Thus it is apparent that of Cook's prior criminal history, the only thing that could properly be considered is a 1972 conviction for malicious destruction of property with a $100 fine and costs. . . ."
While we affirm in part, we nevertheless remand this cause to the trial court with directions to conduct another sentencing hearing in strict compliance with the mandate of the Alabama Supreme Court as enunciated in Cook v. State, supra, and to transmit a full transcript of such proceedings to this court.
AFFIRMED IN PART; REMANDED WITH DIRECTIONS.
All the Judges concur, except HARRIS, P.J., concurs in the result only. *Page 938