[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 977 
Appellant was indicted by the August, 1978, term of the Montgomery Grand Jury for the capital murder of his cousin, Susie Bell Sanders. Ala. Code §§ 13-11-2 (a)(6), (13) (1975). He was tried, convicted, and sentenced to death, with such being affirmed by this court. Julius v. State, 407 So.2d 141
(Ala.Cr.App. 1980). Pursuant to the holdings in Beck v.Alabama, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980), and Beck v. State, 396 So.2d 645 (Ala. 1980), this cause was remanded to the circuit court for a new trial. The instant appeal is a result of appellant's retrial wherein he was again convicted of the capital crime and sentenced to death.[1]
The instant facts are substantially the same as those previously recited by this court in our original disposition ofJulius. Consequently, any further recitation of facts is unnecessary.
 I
Appellant contends that the trial court committed reversible error during its oral charge to the jury. *Page 978 
After the jury had been given its instructions and instructed to deliberate, it sent a question to the trial court. The jury was reassembled in the courtroom where the trial court disclosed the nature of the jury's question — redefinition of the elements of the crimes with which appellant was charged. The trial court repeated its lengthy charge on such and in conclusion stated:
 "It's only if you don't find any aggravating circumstances that you then have to determine whether it's murder in the first degree, murder in the second degree, manslaughter, or again, not guilty." (R. 291)
In regard to the lesser included offenses of first and second degree murder, the trial court's charge was correct. The subsections of the capital felony under which appellant was indicted, § 13-11-2 (a)(6) and (13), punish "any murder" capitally regardless of degree, § 13-1-70 Code of Alabama 1975, if it was committed with proof of its attendant aggravating circumstance. If the jury found either aggravating circumstance to exist, namely that appellant had been convicted of first or second degree murder within the twenty years preceding the instant offense or that he was under a sentence of life imprisonment at the time of commission of the instant offense, then it had to determine whether the killing of Sanders was murder in either degree or manslaughter. If the jury found the killing to have been murder, then appellant could only have been found guilty of either capital offense. Conversely, if the jury determined that the killing constituted one of the degrees of murder, then it must find the existence of an aggravating circumstance in order to convict the appellant of a capital offense. We note that both aggravating circumstances were proven without contradiction. A defendant whose offense meets the aggravating requirements of either § 13-11-2 (a)(6) or (13) must be found guilty of a capital offense if his killing is found to be murder. Therefore, the trial court properly instructed the jury that only if it did not find either of the aggravating circumstances could it then consider if appellant had committed one of the lesser included offenses.
The same cannot be said about the charge as it applies to the lesser included offense of first degree manslaughter. Theoretically, the jury could have found aggravating circumstances existed at the time of Sanders's death, and still have determined the killing was not a murder. This is because first degree manslaughter is not "any murder," as that language is used in § 13-11-1 (a)(6) and (13). Thus, the trial court's oral charge created a condition precedent to consideration of the lesser included offense of first degree manslaughter, which was technically incorrect. However, the error does not result in reversible error unless it "has or probably has affected the substantial right of the appellant." A.R.A.P. 45A.
Thus, resolution of the issue revolves around whether the evidence would support the giving of a charge on first degree manslaughter.
The trial court properly charged the jury that the difference between second degree murder and first degree manslaughter was the omission of the element of malice in manslaughter. Consequently, if the evidence supports a finding of malice, then the trial court had no duty to charge on first degree manslaughter.
In Lowery v. State, 294 Ala. 347, 348, 317 So.2d 360, 361
(1975), malice was defined as "a wrongful act purposefully done and without just cause or legal excuse." This court, inCommander v. State, 374 So.2d 910, 918-19 (Ala.Cr.App. 1978),cert. denied, 374 So.2d 921 (Ala. 1979), in discussing the element of malice, stated:
 "Malice aforethought cannot be given a literal interpretation and has acquired a strictly technical definition and comprehends a number of different conditions of mind. It is said to include all those states and conditions of mind which accompany a homicide committed without legal excuse or extenuation. Malice aforethought may be regarded as the mental state of a person voluntarily doing *Page 979 
an act which ordinarily will cause serious injury or death to another without excuse or justification. While actual hatred or enmity may be present, malice is not limited in its meaning to hatred, ill will, or malevolence. Moreover, malice aforethought may exist although there is no particular enmity or ill will toward the victim and even though there is no specific intent to take human life.
 "If the defendant had voluntarily committed an act which in the ordinary course of events would or might cause death or serious bodily harm, he is liable for murder although he did not actually intend that death should follow.
 "Malice as an essential characteristic of the crime of murder may be either express or implied.
 "Express malice is defined as an intent either to kill or do serious bodily harm or with reckless disregard of the consequence of the act, to do any cruel act which results in death.
 "Generally, however, implied malice may be regarded as the equivalent of the phrase `constructive malice.' That is, malice as such does not exist but the law regards the circumstances of the act as so harmful that the law punishes the act as though malice did in fact exist. R. Anderson, Wharton's Criminal Law and Procedure, §§ 242, 244, 245 (10th ed. 1957).
 "In this state, second degree murder embraces those homicides in which malice was implied at common law and also those attended with evidences of express malice. Fields [v. State], 52 Ala. [348] at 352.
 "Because the condition of a man's mind or heart is rarely the subject of direct and positive proof,
 "`Malice is said to be implied where there is no deliberate mind and formed design to take life, but where the killing, nevertheless, is done without justification or excuse, and without provocation, or without sufficient provocation to reduce the offense to manslaughter. It is sometimes said that malice is implied where no considerable provocation appears, or where all the circumstances show an abandoned or malignant heart. However, it is not necessary that this condition of mind or heart be characteristic of the slayer; malice, in its legal sense may exist without actual intention of any mischief, if the killing is the actual consequence of the commission of an act, capable of doing great bodily harm, so carelessly, recklessly, or wantonly as to evidence depravity of mind and disregard for human life, although there is no actual design or intention to encompass death. 40 Am.Jur.2d, Homicide § 51.'"
See also Clark v. State, 333 So.2d 885 (Ala.Cr.App.), cert.denied, 333 So.2d 890 (Ala. 1976).
Malice is an essential ingredient of murder. As a general rule, it is an inferential fact not susceptible of positive or direct proof. It arises by inference from other facts proven, such as the character of the assault, the facts and circumstances surrounding the offense, and other attendant circumstances. Steele v. State, 389 So.2d 591 (Ala.Cr.App. 1980); Strong v. State, 52 Ala. App. 237, 291 So.2d 325 (1974).
In Sanders v. State, 392 So.2d 1280, 1283 (Ala.Cr.App. 1980), this court quoted with approval the following from F. Wharton,The Law of Homicide § 151 (3d ed. 1907):
 "Where the intent to kill appears from the circumstances preceding or connected with the homicide there can be no question of implied malice. And it has been held that an act the natural consequence of which is death, when unexplained, is evidence in itself of the preconceived intention and deliberation necessary to constitute murder in the first degree."
As stated in Diamond v. State, 219 Ala. 674, 676, 123 So. 55,57 (1929):
 "[W]hen a person enters into combat with another, intending no more serious injury than an ordinary battery, and no weapon is used, and death ensues, the person thus causing death, if his acts were wrongful or unlawful, and nothing *Page 980 
more appears, would be guilty of no higher grade of homicide than manslaughter in the first degree. Still, if the force used is excessive and the assault is brutal, malice may be inferred which would raise the grade of the offense to murder. (Citations omitted; emphasis added).
See also Higdon v. State, 367 So.2d 991 (Ala.Cr.App. 1979).
Once a prima facie case of murder is established, no burden of proof shifts to the defendant to establish that the killing was manslaughter, i.e., he does not have to prove an absence of malice. Mitchell v. State, 342 So.2d 927 (Ala.Cr.App.), cert.denied, 342 So.2d 933 (Ala. 1977). Likewise, the state has no burden of proving the lack of an excuse for the commission of a homicide. Every killing is unlawful unless expressly excused or justified by law; once a homicide is shown, the defendant must prove circumstances in mitigation, excuse or justification unless shown by the evidence produced against him. Flint v.State, 370 So.2d 332, 336 (Ala.Cr.App. 1979). See Taylor v.State, 405 So.2d 946 (Ala.Cr.App.), cert. denied, 405 So.2d 951
(Ala. 1981). As this court has stated: "Where the fact of the killing is shown, unaccompanied by circumstances of legal justification, excuse or mitigation, the law presumes that the homicide was committed with malice, unless the contrary is shown." Young v. State, 428 So.2d 155, 159 (Ala.Cr.App. 1982).
As stated in Helton v. State, 372 So.2d 390, 393 (Ala.Cr.App. 1979): ". . . malice raising the grade of a homicide from manslaughter to murder will not ordinarily be inferred from a blow with the fist. . . . However if the defendant used excessive force or was guilty of extreme brutality, malice may be inferred." Maness v. State, 57 Ala. App. 431, 329 So.2d 120,cert. denied, 295 Ala. 411, 329 So.2d 126 (1976). Malice has been found to exist in an assault with intent to murder case where the victim was strangled. Hayes v. State, 384 So.2d 623
(Ala.Cr.App. 1979), cert. denied, 384 So.2d 627 (Ala. 1980). In addition, one case used evidence, inter alia, of the defendant's presence in the neighborhood close to the time of the victim's disappearance, as well as trace evidence of carpet fibers found on the defendant's clothing and a hair matching the same general characteristics of that of the defendant's which was found in the victim's home to establish malice.Dolvin v. State, 391 So.2d 133 (Ala. 1980); Braggs v. State,283 Ala. 570, 219 So.2d 396 (1969).
As stated in Hopper v. Evans, 456 U.S. 605, 102 S.Ct. 2049,2053, 72 L.Ed.2d 367 (1982):
 "Beck[2] held that due process requires that a lesser included offense instruction be given when the evidence warrants such an instruction. But due process requires that a lesser included offense instruction be given only when the evidence warrants such an instruction. The jury's discretion is thus channelled so that it may convict a defendant of any crime fairly supported by the evidence. Under Alabama law, the rule in non-capital cases is that a lesser included offense instruction should be given if `there is any reasonable theory from the evidence which would support the position.' Fulghum v. State, 291 Ala. 71, 75, 277 So.2d 886, 890 (1973). The federal rule is that a lesser included offense instruction should be given `if the evidence would permit a jury rationally to find [a defendant] guilty of the lesser offense and acquit him of the greater.' Keeble v. United States, 412 U.S. 205, 208, 93 S.Ct. 1993, 1995, 36 L.Ed.2d 844 (1973). The Alabama rule clearly does not offend federal constitutional standards and no reason has been advanced why it should not apply in capital cases."
Thus, "a charge on a lesser, non-capital offense is required only when there is a basis in the evidence which provides a reasonable theory supportive of the charge." Goldbolt v. State,429 So.2d 1131, 1134 *Page 981 
(Ala.Cr.App. 1982). See also Cook v. State, 431 So.2d 1322
(Ala. 1983).
The evidence in the instant case paints a violent scene of a struggle for life by the victim, who was raped and subjected to acts of grotesque sexual abuse. Her home was made a shambles by her futile attempts to escape. Appellant attacked and abused the victim virtually throughout the house, as evidenced by fibers of the various carpets throughout the house being found on his clothing. The evidence of the numerous wounds on the victim as well as the gashes on her neck caused by appellant's fingernails graphically depict the violence of the killing. There are no circumstances in the record, presented either by the state or appellant, establishing a legal justification or excuse for, or mitigation of, the brutal killing. Young, supra.
We find, therefore, that the state sufficiently proved the element of malice and the trial court erred, albeit in appellant's favor, by charging the jury on the lesser included offense of first degree manslaughter, as there was no factual basis to support such. Consequently, the latter portion of the above challenged charge to the jury, though technically erroneous, caused appellant no prejudice in any manner. Although the charge was abstract, it nevertheless was favorable to appellant and he has no cause to complain. See generallyStrong, supra. Under the evidence, he was not entitled to a charge on first degree manslaughter and the jury should not have considered such. Thus we hold that the giving of this charge has not affected the substantial rights of the appellant.
 II
Appellant contends that the overlap between the aggravating components of the capital offense definitions found in § 13-11-2 and the aggravating circumstances of § 13-11-6, which are to be considered by the jury at the sentencing phase of trial and by the trial court at its sentencing hearing, denies him a "separate trial on punishment." He asserts that once the jury has found him guilty of the capital offense, it has, for all intents and purposes, sentenced him to death as it has, in most instances, already found that an aggravating circumstance exists.
In Dobard v. State, 435 So.2d 1338 (Ala.Cr.App. 1982), the defendant was charged, under § 13A-5-31 (a)(5) Code of Alabama 1975, with murder of a police officer on duty. After he was found guilty and a death sentence was recommended by the jury, the trial court reviewed the jury's sentence recommendation and found, inter alia, that, "The capital felony was committed for the purpose of avoiding or preventing a lawful arrest."
On appeal, Dobard argued that the above aggravating circumstance "essentially duplicates the offense charged in the indictment and, therefore, may not be considered an aggravating circumstance in this case." In support thereof Dobard citedKeller v. State, 380 So.2d 926 (Ala.Cr.App. 1979), cert.denied, 380 So.2d 938 (Ala. 1980).
In response, we held that "the rule in Keller, to the effect that the aggravating circumstance charged in the indictment cannot be used as both the criminal charge and the circumstance aggravating that charge, has been tacitly overruled in Kyzer v.State, 399 So.2d 330 (Ala. 1981), and Beck, supra." Dobard, supra; see also Ala. Code § 13A-5-50 (1975).
Under Beck, the sentence determining phase is entirely separate from the guilt phase of the capital trial. The sentencing procedure outlined in Beck applies only if the defendant is first found guilty of the substantive offense. The state must prove beyond a reasonable doubt the aggravating circumstances averred in the indictment. However, as we have previously observed:
 ". . . the fact that due process protects an accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime charged is not relevant under Beck as to weighing aggravating and mitigating circumstances at the sentence determining phase. *Page 982 
 "The separate acts of proving facts at the guilt phase and weighing facts against each other at the penalty phase are not to be confused.
 "`While the existence of an aggravating or mitigating circumstance is a fact susceptible to proof under a reasonable doubt or preponderance standard, see State v. Dixon, 283 So.2d 1, 9
(Fla. 1973), and State v. Johnson, 298 N.C. 47, 257 S.E.2d 597, 617-18 (1979), the relative weight is not. The process of weighing circumstances is a matter for judge and jury, and, unlike facts, is not susceptible to proof by either party. Petitioner's contrary suggestion is based on a misunderstanding of the weighing process, the statute and the guiding and channeling function identified in Proffitt v. Florida, 428 U.S. [242] at 258, 96 S.Ct. [2960] at 2969 [49 L.Ed.2d 913]. Indeed, it appears no case has applied In re Winship in the manner Ford urges. The North Carolina and Utah cases cited by him which imposed a reasonable doubt standard in this situation turned on construction of state statutes rather than the due process rationale of In re Winship. See State v. Johnson, 257 S.E.2d [597] at 617, and State v. Woods, 648 P.2d 71 (1981) [No. 16486, Sept. 21, 1981].' Ford v. Strickland, 676 F.2d 434, 442 (11th Cir. 1982).
 "As well, at the sentencing phase the State is permitted to offer any other statutorily listed aggravating circumstance which was not averred in the indictment, but which was proved beyond a reasonable doubt at the guilt phase at the sentencing hearing. Beck at 663. Thus while the aggravating circumstances must be proven beyond a reasonable doubt, the jury may return the death penalty if it simply does not find the aggravating circumstances are outweighed by the mitigating circumstances. We find this to be in accord with sentencing procedures previously upheld as meeting constitutional standards. Gray v. Lucas, 677 F.2d 1086 (5th Cir. 1982). See also People v. Frierson, 25 Cal.3d 142, 158 Cal.R. 281, 599 P.2d 587
(1979)."
 Whisenhant v. State, [Ms. 1 Div. 333, Nov. 23, 1982] (Ala.Cr.App. 1982).
We find appellant's contention to be without merit.
 III
In accordance with the mandate of Beck, 396 So.2d 645, 664, supra, we find the instant offense one properly punishable by death. We also find similar crimes throughout the state being punished capitally. See Hubbard v. State, 382 So.2d 577
(Ala.Cr.App. 1979), aff'd, 382 So.2d 597 (Ala. 1980), vacated,405 So.2d 695 (Ala. 1981). Lastly, we find the sentence of death appropriate in relation to appellant. We note that there were no accomplices to the instant crime. We have searched the record for error prejudicial to the substantial right of appellant and have found none. This cause is hereby affirmed.
AFFIRMED.
All the Judges concur.
[1] See trial court's findings of fact attached to this opinion as Appendix A.
[2] Beck v. Alabama, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392
(1980).
 APPENDIX A CIRCUIT COURT FIFTEENTH JUDICIAL CIRCUIT CC-78-861-G STATE OF ALABAMA, Plaintiff, v. ARTHUR JAMES JULIUS, Defendant. SENTENCING ORDER
On August 15, 1978, defendant was indicted for the capital murder of Susie Bell Sanders. The aggravating circumstances alleged in the indictment were that the defendant had previously been convicted of murder in the first degree in the twenty years preceding the offense and was serving a sentence of life imprisonment in the *Page 983 
penitentiary at the time of the offense. (Code of Ala. 13-11-2 (a)(6) (13).[1]
On April 20, 1982, the case was tried before the undersigned by jury of defendant's peers which returned a verdict of guilty of the capital offense as charged in the indictment and in a separate hearing returned a verdict recommending the defendant's punishment be fixed at death.
Pursuant to § 13-11-3, supra, a sentencing hearing was held before the undersigned on May 7, 1982. Prior thereto, a pre-sentence report was ordered and made a part of the record in this case. Counsel for defendant and the defendant were given ample opportunity to examine the report for inaccuracies and no part of the pre-sentence report has been, or shall be, kept confidential. Neither counsel for the defendant nor the defendant suggested any corrections in the pre-sentence report.
The State and the defendant were given the right to present evidence to the court concerning any part of the report. No further evidence was presented and neither counsel nor the defendant had any further remarks to make to the court at the hearing. The court has considered the pre-sentence report as to the background of defendant and as to other information in the report which is prescribed by law or court rule for felony cases generally. The court, however, has made its own independent analysis of the existence or non-existence of aggravating and mitigating circumstances. The court has made its own special application of the facts which the court has heard and carefully reviewed to the enumerated aggravating circumstances and to mitigating circumstances whether enumerated or not.
 SUMMARY OF THE CRIME AND THE DEFENDANT'S PARTICIPATION
On January 29, 1978, the defendant was in custody of the Department of Corrections and was assigned to the Draper Work Release Center. The defendant was given an eight-hour pass that date commencing at 11:00 a.m.
The defendant was picked up at the Draper Work Release Center by Willie Clayton (a cousin). At approximately 3:30 p.m., Clayton loaned the defendant his car which the defendant returned to him at 6:25. Defendant went to the victim's house and while at the house, it is clear from the evidence that numerous deviant sexual acts were perpetrated on the victim and that a struggle occurred.
Clayton took the defendant back to the Work Release Center and it is noted that the defendant at this time had money which he did not have when he was picked up at the Center, (the victim's boyfriend testified that some money he had given the victim that morning was missing). When defendant arrived at the Center, he made statements to Clayton which infer the guilty mind of the defendant, and when he entered the Center he informed one of the Corrections officers that he was expecting
an emergency phone call.
The victim was killed by strangulation. Numerous fibers from the carpet in the victim's home were found on the clothes of the defendant and other circumstantial evidence was present which fully supports the jury's verdict of guilt.
 AGGRAVATING AND MITIGATING CIRCUMSTANCES
From the court's independent consideration of the evidence, the court is convinced beyond a reasonable doubt that the following aggravating circumstances are present.
1) The capital felony was committed by the defendant while under a sentence of imprisonment,
2) The defendant was previously convicted of another felony involving the use or threat of violence to the person; and
3) The capital felony was especially heinous, atrocious or cruel.
From the court's consideration of the evidence and all other factors as well as a *Page 984 
pre-sentence report, the court finds the following mitigating circumstances present:
1) The defendant was 32 years old at the time of the offense.
 CONCLUSION
All of the proper evidence having been received and the arguments given, the court has weighed each individual aggravating circumstance as it applies to the defendant and the court has weighed the aggravating circumstances collectively. The court has weighed the mitigating circumstance and has weighed the aggravating circumstances against the mitigating circumstance.
It is the conclusion of this court that the aggravating circumstances overwhelmingly outweigh the mitigating circumstance. Accordingly, the court accepts the recommendation of the jury that the death penalty be imposed against Arthur James Julius.
Formal sentencing is hereby set for May 14, 1982 at 8:45 a.m.
DONE and ORDERED in chambers this 10th day of May, 1982.
 /s/ William R. Gordon
WILLIAM R. GORDON Circuit Judge
[1] Defendant was tried for this offense in 1978, found guilty and sentenced to death. The conviction was overturned pursuant to Beck v. State, 396 So.2d 645 (Ala. 1980).