This is an appeal from a denial after an evidentiary hearing of appellant's petition for writ of error coram nobis filed November 3, 1982, seeking relief from the effect of a judgment of conviction and sentence for murder on November 9, 1966. The petitioner alleges, inter alia, that said "conviction was used to make a subsequent act a capital offense" and that she thereby "is currently on death row awaiting execution in Case No. CC-81-865, having been convicted of Murder by a Convicted Murderer." It is understood by the writer of this opinion that an appeal in Case No. CC-81-865 is now pending in this Court, but he does not plan to examine the record, transcript or briefs in that case, believing it appropriate for him not to inject himself into the other case.
The gravamen of the coram nobis petition is that upon her conviction and sentence in 1966, she "was not advised of her right to appeal, nor her right to appellate counsel, by her appointed attorney or by the Court" and that she was "entitled to an out of time appeal or, if that is not possible, a new trial, because of the failure of her appointed counsel, and of the court to advise her of her appellate rights."
At the hearing of the petition, the petitioner and her appointed attorney in the case in which she was convicted of murder in 1966 were the only witnesses. In denying the petition, the trial judge delivered his written "FINDINGS OF FACT MEMORANDUM OF LAW," by which we are convinced that the trial court was not in error in denying the petition. We quote therefrom as follows:
"UNCONTESTED AND/OR STIPULATED FACTS
"On the stipulation, testimony and exhibits admitted, there are several uncontested or stipulated facts which may be recited:
 "1. Judge, W.C. Warren, [the judge presiding in the 1966 case] died on February 2, 1973.
 "2. Mr. J.P. Carr, the official court reporter to Judge W.C. Warren, died on May 19, 1971.
 "3. The State has been unable to find any shorthand notes, or transcript of such notes, or any record of any notes being transcribed. All known files and records were searched.
 "4. Hon. Louis Lackey, now a retired circuit judge, would have testified if called that he was the district attorney who prosecuted the defendant in 1966, and that he has no present recollection of whether or not the defendant was advised of the right to appeal, or of a right to a transcript, or of a right to appellate counsel.
"THE DISPUTED FACTS THE COURT'S FINDINGS
"The factual dispute essentially surrounds the events of November 9, 1966. The Petitioner's position is that she was tried by a jury on a charge of Murder in the First Degree, was found guilty of Murder in the Second Degree, and was sentenced to twelve (12) years. The State's position is that the proceedings of November 9, 1966, did not constitute a trial, but a settlement.
"In 1966, Murder in the First Degree was a capital charge. Punishment was either death or life imprisonment at the discretion of the jury. Title 14, Section 319, Ala. Code (1958 Recomp.). Every charge of Murder in the First Degree included Murder in the Second Degree, and even upon a confession of guilt, the court had to proceed to establish the degree of the crime by a jury verdict after an examination of the evidence. The jury determined the sentence as well as the degree. Title 14, Section 317, Ala. Code (1958 Recomp.). It was not until 1969 that Alabama judges were permitted to accept pleas of guilty, determine the degree of the offense, and fix punishment in such cases without intervention of a jury. See Title 15, Section 277, Ala. Code (Sup. 1973, as amended 1969). Even under the 1969 amendment, the court could not *Page 693 
bind a jury already empanelled in a murder case. See, e.g.,Waldrop v. State, 54 Ala. App. 163, 306 So.2d 29 (Ala.Cr.App. 1974), cert. denied, 293 Ala. 777, 306 So.2d 33 (Ala. 1975).
"The bench notes of the trial judge summarily state:
 "`Nov. 9 '66 Jury and verdict guilty of Murder in 2nd degree as charged and the defendant's punishment is fixed by the jury at impronment [sic] in state [prison] for twelve years — Defendant then by the Court adjudged guilty accordingly of Murder in the 2nd degree as charged in the indictment and the defendants [sic] punishment is fixed at imprisonment in the State penitentiary for a term of twelve years — Defendant then being in open Court and being asked by the Court if she had anything to say whether the sentence of law should not now be pronounced upon her and Defendant says nothing. Defendant is sentenced to imprisonment in the penitentiary of Alabama for twelve years as punishment for this offense in manner and form provided by law./s/ W.C. Warren, Judge Presiding.'
"Although the judgment entry seemingly indicates a trial, it also supports a conviction based upon the `mini-trial' required at the time. The credible evidence eliminates the ambiguity. On November 9, 1966, the case against Patricia Ann Thomas was settled, with the defendant receiving a twelve year sentence for Murder in the Second Degree. A review of the evidence before the Court establishes this fact.
"Mr. Ward, the appointed counsel, testified that he reached an agreement with the State, and communicated the proposed sentence of twelve years to the defendant. He further testified that she agreed to accept the sentence, and that he would not have taken the settlement without her consent. [R.27, 33] He also stated that he explained to her on the day she came to court that a settlement would be entered. [R.39] He recommended the settlement to her, stating that he thought it was a good settlement. He further testified that the proceedings were upon an agreement between the District Attorney, the defense counsel, and the Judge. The petitioner testified that Mr. Ward had previously communicated an offer of life to her, and that she told him she did not want to spend the rest of her life in prison. Later, he informed her that he could settle the case for twelve years. She testified, `I told him, you know, `"You're my lawyer."' If that's what he thought, it was you know . . ." [R.10, 18] She then described the events of November 9, 1966, as follows:
 "`All of us came in and they told us to stand up and we took — we raised up our right hand and took our little pledge, and they called a witness to the stand. She testified. Then they passed a yellow legal tablet to some people sitting up there. They read it. They passed it back to the Judge. They told me and my attorney to stand up and come forward. We came up to a little table and he asked the Judge to sentence me to twelve years in the women's penitentiary and he asked each one of them, one by one, sitting over on that side would they go along with it, and they said yes. [R.11]'
"Several notations also support the settlement finding. Mr. Ward testified that at the time he made a notation on the back of his file: `Agreed settlement, twelve years.' [R.44] The official Consolidated Docket reflects the following fee entries by the Circuit Clerk: `Felony — P.G. (15.00) 12.00 12.00'
Thus, the clerk taxed the cost based on a plea of guilty.
"Therefore, based upon the evidence before the Court, and the fact that this Court finds the Petitioner's testimony is not believable on some points, this court finds that the Petitioner and her attorney settled her case and that the proceeding on November 9, 1966, was simply the required `mini-trial' to effectuate the agreement. See, e.g., Howard v. State, 280 Ala. 430, 194 So.2d 834 (1967), for a case with a similar judgment entry, and a like result.
"The settlement of November 9, 1966, was pre-Boykin, and therefore does not meet the procedures and record requirements of *Page 694 
that case. See Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709,23 L.Ed.2d 274 (1969). The Petitioner has made no claim that her settlement of November 9, 1966, constituted an illegal pre-Boykin plea. She takes the position that she did not settle the case. Again, the credible evidence is that she knowingly and voluntarily entered into a settlement `mini-trial' knowing that she would receive twelve years upon a conviction for the lesser-included offense of Murder in the Second Degree. Mr. Ward testified that Judge Warren:
 "`[G]enerally went through the formality of informing the Defendant what they . . . of pleading guilty and so forth and so on and he had a regular procedure that he went through where he instructed the jury and . . . [interrupted by defense counsel] [R.41]'
"The focus of the hearing before this Court was on the issues previously mentioned. There was no direct attempt to invalidate the settlement on the grounds of an unknowing or involuntary settlement. Because this settlement was pre-Boykin the burden is on the Petitioner to show an invalid settlement, and she did not do so. See Bryant v. Elliott, 472 F.2d 572, 573 (5th Cir. 1973). See also Hudson v. State, 45 Ala. App. 449, 231 So.2d 772
(Ala.Cr.App. 1969), cert. denied, 285 Ala. 754, 231 So.2d 773
(1970) [Boykin not retroactive].
"The Petitioner says that neither the Court nor her appointed counsel advised her of her right to an in forma pauperis appeal. The Court finds that the Petitioner is not a credible witness on this point. Her demeanor and appearance on the stand, and her testimony as a whole, compels this Court to reject some of her testimony. Her testimony is in direct conflict with that of her attorney on several critical points. Mr. Ward's testimony is credible; hers is not. In some instances, her answers are to specific questions which are themselves open to interpretation. For example, she did not testify that the settlement entered was over her objection or without her approval. She was asked if her attorney explained to her that he would be recommending to a jury that she be found guilty and sentenced to twelve years. She said no. [R.10] She was asked if she `wanted' to plead guilty `to that.' [R10] She said no. Neither of these answers show an unknowing or involuntary plea. There is no requirement that an attorney explain the fact that the settlement would be presented to a jury. It is entirely understandable that she may not have wanted to plead guilty and accept a twelve year sentence, but she told Mr. Ward that he was her attorney and `if that's what he thought . . .'
"The Court specifically rejects as not credible her testimony that neither the Judge nor her attorney informed her of her right to appeal, her right to a transcript, or her right to appellate counsel. [See, e.g., R.11] She further testified that Mr. Ward informed her that Alabama did not have a defense of self-defense. [R.12] Again, her testimony on this point is not believable. Mr. Ward denied making such a statement, and his testimony is credible. [R.29, 33]
"On the question of whether she was informed of a right to in forma pauperis appeal, Mr. Ward testified:
 "`Well, let me say, I do not recall advising her to appeal from the agreed settlement, no sir. I would — to me, that would be the height of absurdity to appeal from an agreed settlement. [R.33-34]
"`Q. Do you recall if the Judge advised her?
"`A. Recall if the Judge — not in my presence.
"`Q. Of her right to appeal?
"`A. Not in my presence.
"`Q. Not in your presence?
"`A. No. [R.34]
 "`Q. Mr. Ward, you do not have an independent recollection as to whether Judge Warren told her she had a right to appeal or not, do you?
"`A. No, sir, I don't. I don't have any . . .
 "`Q. And there's no indication in your notes one way or the other whether he told her she had a right to appeal? *Page 695 
 "`A. No. I don't have any . . . I didn't take down his . . . what he told her.
"`Q. Fine, sir.
 "`A. He generally went through the formality of informing the Defendant what they . . . of pleading guilty and so forth and so on and he had a regular procedure that he went through where he instructed the jury and . . .' [interrupted by defense counsel] [R.41]
"There has been no showing by credible evidence that Petitioner was not told by either Judge Warren or Mr. Ward that she had a right to in forma pauperis appeal. She testified that she was not so informed. She also testified that Mr. Ward told her that there was no defense of self-defense in Alabama, which Mr. Ward denied. The Court found Mr. Ward's testimony credible. She further testified that she did not know of her right to appeal until the day before the hearing on this petitioner. [R.12, 14] Yet it was later shown that she had filed an affidavit in this proceeding on December 22, 1982, which she had signed under oath on December 17, 1982, in which she stated:
 "`We had a trial on November 9, 1966, wherein I was found guilty of Murder Second Degree and sentenced to twelve (12) years imprisonment. At no time was I advised by Mr. Ward or by the Court that I had a right to an appeal or a right to a transcript or a right to an attorney to represent me on an appeal.'
"Further, she later was asked if she talked with her attorney at the capital trial about her right to appeal the first case. She answered, `I think so. I would say we did.' [R.15] And although she `remembers' virtually everything she avers in support of her petition, she could not remember pleading guilty to a charge of Leaving the Scene of an Accident before Judge Baird on December 9, 1980, in Case No. CC-80-589. She indicated that she did not plead guilty, although the records of this Court show she did, and she remembers the sentence imposed. [See R.22]
"Therefore, the Court finds the Petitioner failed to produce clear and convincing evidence [and in fact failed to reasonably satisfy this Court] that she was not informed of her right to in forma pauperis appeal.
"Petitioner also avers that her appointed counsel failed to properly advise her, thus raising the issue of incompetency of counsel. A short review of Mr. Ward's actions, as found from the credible evidence, shows that after being appointed to represent the Petitioner, Mr. Ward participated in an arraignment; he interviewed his client; he interviewed possible witnesses; he prepared a pretrial motion, although it was not filed due to the settlement; he and his client waived a special venire and in return the State waived capital punishment; he negotiated a settlement with the State and informed his client of his actions. There is nothing in the evidence which leads this Court to think that Mr. Ward's pretrial preparation was inadequate. Once a settlement had been reached and the Petitioner, in effect, had told Mr. Ward to do what he thought was best, he settled the case for what he thought was a good settlement. Mr. Ward did testify that he had no present recollection on the question of appeal, and said that he did not recall advising her to appeal from the settlement. He further stated that he thought that an appeal from an agreed settlement would be the `height of absurdity.' [R. 33-34]. Aside from the obvious `absurdity' of settling a case, then entering an appeal in Mr. Ward's opinion, there would have been a very real reason to advise a client not to appeal such a settlement. The Petitioner had been indicted for Murder in the First Degree, a capital charge. The settlement was for twelve years on a conviction for Murder in the Second Degree. The jury fixed the punishment and the degree. In Clark v. State, 48 Ala. App. 108, 262 So.2d 310
(Ala.Cr.App.), cert. denied, 288 Ala. 736, 262 So.2d 312 (1972), the defendant entered a plea of guilty to Murder in the Second Degree after being indicted for Murder in the First Degree. He was sentenced to life imprisonment. Later, he gave notice of appeal, and he received an in forma pauperis appeal, with a free transcript and appointed counsel. The conviction was reversed for *Page 696 
failure to fully comply with Boykin. After the reversal, the case was tried on the original charge of Murder in the First Degree, and the defendant was convicted as charged and sentenced to life imprisonment by the jury. On appeal, the Alabama Supreme Court held that the conviction on the original charge was not barred by the reversed conviction on the lesser charge after the void plea. Clark v. State, 294 Ala. 485, 318 So.2d 805 (1974), cert. denied, 423 U.S. 937,96 S.Ct. 298, 46 L.Ed.2d 270 (1976). Thus, had there been an appeal which resulted in a reversal of the settlement, the Petitioner could have been tried on the original charge of Murder in the First Degree. She would have faced a penitentiary term of life upon conviction for that offense, assuming of course that the State did not or could not seek the death penalty at the trial. If she was convicted of Murder in the Second Degree, she would have faced a sentence of any number of years more than ten, including the possibility of a life sentence. Another example: Sammie Beckley was convicted in this Circuit before Hon. Aubrey Dominick [now retired] of Burglary in the First Degree and Rape. The jury imposed sentences of thirty years for the Burglary and fifteen years and one day for the Rape. The cases were reversed on appeal. Beckley v. State,342 So.2d 1330 (Ala.Cr.App.), cert. denied, 342 So.2d 1331 (Ala. 1976). The defendant was subsequently retried, and for the Rape the jury sentenced him to one hundred fifty years imprisonment as opposed to the original fifteen years and one day. The conviction was affirmed on appeal. Beckley v. State,353 So.2d 542 (Ala.Cr.App. 1977). Likewise, he was retried for the Burglary, and upon conviction the jury sentenced him to life imprisonment as opposed to the original thirty years. Beckley v.State, 357 So.2d 1022 (Ala.Cr.App. 1978). Sometimes there are very real reasons for an attorney not to advise a client to appeal.
"This Court has been cited to some cases on competency of counsel. The Court finds these cases are distinguishable on their facts. For example, in Hudson v. Alabama, 493 F.2d 171 (5th Cir. 1974), the Fifth Circuit reversed the denial of Federal habeas corpus by the District Court, finding that the defendant had protested the settlement of his case by his attorney and insisted on abiding by his plea of not guilty. Yet counsel proceeded to settle the case without any evidence being presented to the jury. The Court found:
 "`[B]latant disregard by Hudson's attorney for the rights and wishes of his client. Under the standards of this circuit, Hudson was entitled to counsel reasonably likely to render and rendering reasonably effective assistance. . . . Hudson's counsel hardly rendered reasonably effective assistance when he informed the jury of the agreement for conviction and sentence which he had made with the State Solicitor, over the defendant's protestation, and when he allowed a conviction without any presentation of evidence.'
"493 F.2d, at 173. There were no protestations by Petitioner or blatant disregard of her wishes in this case. The duty of the attorney under Alabama law was to prevent the trial from being or appearing to be a farce or mockery of justice. Gore v. State,45 Ala. App. 146, 227 So.2d 432 (Ala.Cr.App.), cert. denied, 284 Ala. 729, 227 So.2d 435 (1969), cert. denied, 397 U.S. 966,90 S.Ct. 1002, 25 L.Ed.2d 258 (1970). The standard imposed by the Fifth Circuit is `not errorless counsel, and not counsel judged ineffective by hindsight, but counsel reasonably likely to render and rendering reasonably effective assistance.' MacKennav. Ellis, 280 F.2d 592, 599 (5th Cir. 1960), cert. denied,368 U.S. 877, 82 S.Ct. 121, 7 L.Ed.2d 78 (1961) [emphasis in original]. There is nothing under the facts of this case to lead this Court to believe that Mr. Ward's representation constituted ineffective assistance of counsel. He was able to settle a capital case on the basis of a twelve year sentence on a lesser-included offense. His actions were in his judgment in his client's best interests, and even judged by hindsight, this Court cannot say that his decisions were ineffective or his representation incompetent." *Page 697 
We think that nothing else needs to be stated to support our opinion that the judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court.
AFFIRMED.
All the Judges concur.