Willie Clisby, Jr. was indicted and convicted for the capital offense of nighttime burglary during the course of which the victim is intentionally killed. Code 1975, § 13-11-2 (a)(4). Sentence was fixed at death. After the arrest, the District Court Judge ordered a psychiatric evaluation for Clisby, who was then examined by a private psychiatrist under contract with Jefferson County to evaluate prisoners. A social worker informed the court of the psychiatrist's conclusions, which showed no evidence of psychosis and found Clisby competent to stand trial and able to aid in his defense.
Clisby pleaded not guilty at his arraignment. The record does not reflect an entry of a plea of not guilty by reason of insanity. It does show that both the assistant district attorney and the defense counsel were under the impression that such plea had been entered. There was a question as to whether the plea might have been withdrawn. In any event, during the course of the trial no reference to an insanity defense was made, and no evidence of mental impairment was presented. Three pertinent motions were made: (1) a motion to empanel a lunacy commission, Code 1975, § 15-16-22; (2) a motion for a court appointed psychiatrist; (3) a motion for funds for a private psychiatrist of the defendant's own choosing.
As to the first two motions, the judge and the defense counsel agreed that these had been dealt with. The psychiatric evaluations found Clisby competent to stand trial and able to aid in his defense and indicated that there was no evidence for involuntary commitment to Bryce Hospital. Regarding the third motion, the judge questioned the issue of funds for a private psychiatrist and this motion was not mentioned again until the sentence hearing. At the sentence hearing, defense counsel argued the right to prove mitigating circumstances relating to mental capacity. Code 1975, §§ 13-11-7 (2) and (6). The trial court ruled that the matter had been adequately covered by the orders to conduct psychiatric evaluations and read the two letters regarding the examinations into the records.
At no point was an objection made to the letters nor were requests made to cross-examine the author of the letters and the psychiatrist. The trial court found no mitigating *Page 97 
circumstances. The substantive issues are:
 I. Were Clisby's rights of confrontation and cross-examination violated by the trial court's consideration of the two letters concerning the psychiatrist's conclusion about Clisby's mental condition?
 II. Was the use of the psychiatric reports at the sentencing hearing a violation of the right to counsel?
 III. Should Clisby have been entitled to hire, at the State's expense, a private psychiatrist to examine him for the purpose of securing expert testimony concerning certain mitigating circumstances?
 IV. Were the procedural changes made in the method of sentencing one convicted of a capital offense from those specifically provided by statute an unconstitutional usurpation of legislative authority and did they violate the doctrine of separation of powers?
 I and II
Regarding the first two issues, we consider the decisions inEstelle v. Smith, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359
(1981), and Proffitt v. Wainwright, 685 F.2d 1227 (11th Cir. 1982). Estelle is distinguished in that there the results of the pretrial examination were used to establish aggravating circumstances necessary to impose the death penalty. InEstelle, the psychiatric evaluations were used by the State to establish the defendant's "future dangerousness." In this case, the reports were referred to as a reason for denying a motion for continuance by defendant to seek further psychiatric evaluation; the psychiatrist merely reported to the court that Clisby understood the charges against him and was capable of assisting in his defense. In Estelle, counsel did not know what issues were going to be covered during the evaluation. Here, counsel knew.
In Estelle, the defendant was ordered to submit to the pretrial examination after being informed of his right to remain silent. The accused in Estelle neither introduced psychiatric evidence nor indicated that he might do so.
Clisby asked for a pretrial psychiatric evaluation, even though he may not have requested the first psychiatric examination. In fact, Clisby made three motions involving psychiatric evaluations.
In Proffitt, the trial judge, in the presence of the defendant and his counsel, suggested that the accused be examined by two court appointed psychiatrists prior to the final sentence determination. The defendant agreed. The psychiatrists' evaluation showed that defendant had been capable of distinguishing right from wrong at the time of the offense. The sentence hearing was held with one of the two examining psychiatrists absent, and the defendant requested to cross-examine the absent psychiatrist. The hearing was completed without the opportunity to cross-examine the second psychiatrist. Proffitt, then, addresses the issue of the right to cross-examine adverse witnesses in capital sentence hearings. The Court, citing Gardner v. Florida, 430 U.S. 349,359, 97 S.Ct. 1197, 1205, 51 L.Ed.2d 393 (1977), handed down the ruling that death sentences may not be imposed on the basis of information which the defendant has not been able to rebut. The information in that case, however, was not disclosed, and the issue of information presented openly was not addressed. The Court in Proffitt goes on to say that the right to cross-examine is essential and fundamental, even though not absolute: cross-examination is a necessary tool to establish the reliability of the information presented.
 III
Addressing the third issue, the indigent defendant in a criminal case does not enjoy a constitutional right to have the aid of the State by the appointment of an expert for his exclusive benefit. Thigpen v. State, 372 So.2d 385
(Ala.Cr.App.), cert. denied, 372 So.2d 387 (Ala. 1979), cert denied, 444 U.S. 1206, 100 S.Ct. 690, 62 L.Ed.2d 660 (1980). The defendant may have that right where necessary for an adequate defense. Anno., 34 A.L.R.3d 1256 (1970). However, "there exists no *Page 98 
constitutional right to the appointment of a private psychiatrist of the defendant's own choosing at public expense." Satterfield v. Zahradnick, 572 F.2d 443 (4th Cir.), cert. denied, 436 U.S. 920, 98 S.Ct. 2270, 56 L.Ed.2d 762
(1978).
 IV
The trial was conducted in accordance with Beck v. State,396 So.2d 645 (1981), following the decision of the United States Supreme Court in Beck v. Alabama, 447 U.S. 625, 100 S.Ct. 2382,65 L.Ed.2d 392 (1980). Clisby challenges the constitutionality of the death penalty statute as construed by Beck. The judicial reconstruction accomplished in Beck was procedural and therefore constitutional, as we noted in Beck: "Under the separation of powers doctrine, this Court cannot change the offense, but a change in procedure to comport with constitutional requirements is not impermissible."
To meet the requirements of the Eight and Fourteenth Amendments, a death penalty statute must not preclude the consideration of relevant mitigating factors. Lockett v. Ohio,438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). The Florida and Texas death penalty statutes have survived constitutional challenges because of the judicial interpretation which allowed the consideration of any mitigating circumstances. Lockett v.Ohio, supra. Furthermore, the essential constitutional requirement of appellate review of sentencing was read into the statute by the Florida Supreme Court, even though the statute was silent as to a specific form of review. Proffitt v.Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976).
In Jackson v. State, 337 So.2d 1242 (Miss. 1976), the Court rendered a decision which provides further support for the judicial modification of the death penalty statute in Beck.Jackson held that the Court exercised its "inherent power to prescribe rules of procedure" to bring the Mississippi capital punishment statute within the constitutional bounds. TheJackson decision was accepted in Irving v. Hargett, 518 F. Supp. 1127
(N.D. Miss. 1981). In addition, certiorari has been denied in three cases challenging judicial reconstruction of the Mississippi capital punishment statute. Jordan v. State,365 So.2d 1198 (Miss. 1979), cert. denied, 444 U.S. 885,100 S.Ct. 175, 62 L.Ed.2d 114 (1979); Irving v. State, 361 So.2d 1360
(Miss. 1978), cert. denied, 441 U.S. 913, 99 S.Ct. 2014,60 L.Ed.2d 386 (1979); Bell v. State, 360 So.2d 1206 (Miss. 1978), cert. denied, 440 U.S. 950, 99 S.Ct. 1433, 59 L.Ed.2d 640
(1979).
 Conclusion
After careful consideration of the facts, and in view of the holdings in Estelle v. Smith and Proffitt v. Wainwright, we remand this case to the court of Criminal Appeals with instructions to remand it to the trial court for reconsideration of its handling of Dr. Estock's report.
We find the procedural challenge without merit.
The decision of the lower court, 456 So.2d 86, is affirmed in part and reversed in part, and the case is remanded for proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
TORBERT, C.J., and MADDOX, JONES, ALMON, SHORES, EMBRY, BEATTY and ADAMS, JJ., concur.