Patricia Anne Thomas Jackson was indicted and tried for the capital murder of *Page 964 
Bonnie Walker, whom she stabbed once through the heart. Ms. Jackson, the appellant herein, was indicted, pursuant to § 13A-5-31 (a)(13), Code of Alabama 1975, for "murder committed by a defendant who has been convicted of murder in the first or second degree in the 20 years preceding the crime." The trial was conducted in compliance with the standards and procedures outlined in Beck v. State, 396 So.2d 645 (Ala. 1980). The jury returned a verdict of "guilty as charged in the indictment," and, after a separate sentencing-phase hearing, fixed appellant's punishment at death. The trial court, after its separate sentencing-phase hearing and in accordance with the jury's verdict, sentenced the appellant to death by electrocution.
It is undisputed that on February 28, 1981, shortly after 1:00 p.m., the appellant stabbed Bonnie Walker once through the heart and that Ms. Walker died as a result of this wound. The facts and circumstances surrounding the stabbing incident, however, were, somewhat, in dispute.
Charlotte Archibald testified that she was visiting the victim, Bonnie Walker, on the day of the stabbing and witnessed an argument between the appellant and the victim. Ms. Archibald originally heard the appellant talking loudly and cursing in front of Sallie B. Hollifield's house, next door to the duplex in which the victim lived. Ms. Archibald went to the victim's screen door to look outside to see what was "going on" next door. The appellant walked over in front of the victim's residence and began hollering inside to the victim. The appellant and the victim then engaged in a heated argument through the victim's screen door. Ms. Archibald prevented any physical contact at that time by holding the screen door, thereby preventing entry by the appellant and preventing the victim from going outside at appellant's request. The appellant then, apparently, left the premises.
After the appellant had disappeared Ms. Archibald left the victim's duplex, entered her van, which was parked in the victim's front yard, and prepared to leave. She was unable to leave because other automobiles had her "blocked in." As she sat in her van she witnessed a second confrontation between the victim and the appellant. They were on the victim's porch arguing with each other and calling each other names. The appellant dared the victim to insult appellant's mother, and, after the victim refused to do so, the appellant hit the victim in the chest with a closed fist. Ms. Archibald did not realize at that time that the appellant had stabbed the victim. She saw the appellant run away and saw the victim disappear inside her residence. The victim quickly reappeared with a knife in her hand. Ms. Archibald then saw the blood all over the victim's blouse and ran to assist her. The victim exclaimed, "That bitch has cut me."
On cross-examination Ms. Archibald admitted that she could not say for certain when the victim was stabbed, but did see the appellant "whop" the victim in the chest with a closed fist. Ms. Archibald further stated that the victim did not have a knife until after the appellant had disappeared, that the victim did not have a knife when the appellant stabbed her.
Pelma Smith lived in the adjoining residence in the same duplex as the victim. He arrived home during the middle of the argument between the appellant and the victim. He testified that the appellant was the aggressor in the argument while the victim was trying to stop it. He witnessed the appellant reach in her purse as she approached the victim. He saw her "cup" a knife in her hand with the blade concealed on the underside of her arm. When the victim, at appellant's insistence, would not insult appellant's mother, the appellant stepped forward and stabbed her in the chest.
According to Smith, the victim was unarmed when the appellant stabbed her. Immediately after the stabbing, the appellant ran off the porch and stated "I told you I'll [sic] kill you." The victim went inside. Smith heard the victim in the kitchen and saw her return to her porch with a *Page 965 
butcher knife. He also heard her say that the appellant had stabbed her.
On cross-examination Smith stated that he did not warn the victim about appellant's knife because he was afraid the appellant might have attacked him, too.
Jimmy Little saw the appellant at Sallie B. Hollifield's house before her argument with the victim. The appellant was upset and mad before she left Hollifield's house. Little saw the appellant walk over to the victim's home and start "bamming" on the door. He heard the appellant "cussing" the victim for being too slow in coming to the door. He witnessed part of the argument, and at one point pulled the appellant off the victim's porch in an attempt to stop it. When his efforts to stop the argument failed, he went back over to, and went inside, Hollifield's house. Little did not witness the stabbing, but he did hear the victim exclaim that the appellant had stabbed her.
Appellant's defense at trial was self-defense. She testified that she went to the victim's residence to purchase some whiskey from the victim. The victim invited her inside, where the victim agreed, initially, to sell her some whiskey. According to the appellant, the victim suddenly changed her mind, began cussing, and told the appellant to leave her home. Before the appellant could leave, Ms. Archibald drew a pistol and began cursing, also. The appellant then told Ms. Archibald that she, the appellant, could "cut" Ms. Archibald before Ms. Archibald could shoot the appellant. At this point, according to the appellant, "Bonnie [the victim] went to go up with her knife . . . And that's when I came down with mine." The appellant explained, however, that the knife with which she stabbed the victim was a "steak knife" that she, the appellant, picked up off the victim's night table when Ms. Archibald drew her pistol.
The appellant further explained that, after she stabbed the victim, the victim threatened to kill her, the appellant. Other insulting words were exchanged and the appellant left. The appellant testified that she did not know she had inflicted a fatal wound at that time and did not know that the victim had died until the next afternoon. She stated that when she heard about the victim's death, and that the police were looking for her, she voluntarily went to the police station and "turned herself in."
On cross-examination the state asked the appellant about an incident which occurred prior to trial at a preliminary hearing. The appellant denied that she told Calvin Winn that the victim, Ms. Walker, was the second person she had killed and that she was going to kill Ms. Archibald when she, the appellant, got out of jail.
Calvin Winn, a rebuttal witness for the state and Ms. Archibald's brother-in-law, testified that the appellant did tell him, on the day of her preliminary hearing, that the victim was the second person she had killed and that she intended to kill Ms. Archibald. The appellant then presented, as witnesses, those matrons in charge of the appellant on the day of her preliminary hearing. They testified that, although the appellant was at the courthouse on the day described by Winn, they did not see Winn and did not let the appellant out of their sight. These witnesses doubted that the alleged conversation between Winn and the appellant ever took place.
In support of the capital murder charged, the state presented proof that the appellant had been previously convicted in 1966 of second-degree murder. The state introduced a certified copy of a judgment entry of the conviction and presented testimony of the prior victim's sister, who identified the appellant as the person convicted in 1966 for the murder of her brother, Andrew Hughes.
The appellant objected at trial and argues on appeal that her 1966 conviction was not a valid conviction because she was not informed, at that time, by counsel or the trial court, that she had a right to appeal the conviction. This issue has been decided against the appellant in a recent proceeding on her petition for writ of error coram nobis seeking relief from the 1966 conviction, and has been affirmed by us on *Page 966 
appeal. See, Jackson v. State, 446 So.2d 691 (Ala.Cr.App. 1983). The trial court's findings at the hearing of the petition for writ of error coram nobis are set out in detail inJackson v. State, supra. As explained, therein, faced in 1966 with a capital charge of first-degree murder and in order to avoid a possible death sentence, the appellant made an agreement to accept a sentence of twelve years' imprisonment in exchange for what was, in effect, a plea of guilty to second-degree murder.[1] The trial court concluded that all parties, including the appellant, herself, agreed to the negotiated "settlement" reached in the 1966 case. The trial court found that appellant's testimony at the coram nobis hearing, that she did not agree with the "settlement" in 1966 and that no one informed her of her right to appeal, was not credible in light of other evidence. The trial court further concluded that the appellant was adequately represented by counsel in the 1966 case, that her best interests were properly considered.
The validity of the 1966 conviction was, therefore, upheld by the "coram nobis" trial court. On appeal we affirmed the trial court's conclusion that the 1966 conviction was valid. See,Jackson v. State, supra. The appellant has presented nothing further on this appeal, and we have found no evidence in the record, to convince us otherwise. The prior conviction was properly proven at the trial below, and, in fact, was admitted by the appellant on cross-examination.
The state's evidence, proof of the 1966 murder conviction and the testimony from the three eyewitnesses to the incident, was sufficient to support the jury's verdict convicting this appellant of capital murder. Her conviction is, therefore, affirmed.
The appellant contends, for the record, that the Alabama Supreme Court's "rewrite" of the Alabama death penalty statute in Beck v. State, 396 So.2d 645 (Ala. 1980), was an unconstitutional usurpation of the legislature's power. However, she concedes, and we agree, that this issue has been decided against her by Clisby v. State, 456 So.2d 86
(Ala.Cr.App. 1982), affirmed in part, reversed in part and remanded on other grounds, 456 So.2d 95 (Ala. 1983), and its progeny. See, Giles v. State, 445 So.2d 876 (Ala.Cr.App. 1984).
The appellant further contends that the death penalty is excessive punishment in her case. She points out that there was only one aggravating circumstance, the § 13A-5-35 (2), Code of Alabama 1975, circumstance that "[t]he defendant was previously convicted of another . . . felony involving the use or threat of violence to the person," which happened to be the same aggravation alleged in the indictment. She acknowledges that the trial court found no mitigating circumstances but argues that it should have found, pursuant to § 13A-5-36 (1), Code of Alabama 1975, that she had "no significant history of prior criminal activity." She concludes that such a finding would have mandated a sentence of life imprisonment without parole instead of death.
Pursuant to the mandate in Beck, supra, we have carefully reviewed the trial court's thorough "Findings of Fact from the Trial and the Sentence Hearings, and Sentence Order,"[2] and have determined that the evidence fully supports its findings, in particular, those findings concerning aggravating and mitigating circumstances. The only aggravating circumstance was the § 13A-5-35 (2) circumstance mentioned above. Contrary to appellant's assertions, there was no convincing evidence of any mitigating circumstances. The appellant did have a "significant history of prior criminal activity." In addition to the prior second-degree murder conviction from 1966, the appellant had "one conviction of Assaulting a Police Officer, one conviction of Resisting Arrest, seven convictions *Page 967 
for disorderly conduct, one conviction of malicious destruction of property, one conviction of leaving the scene of an accident, and several traffic infractions." See, Appendix "A". Although the appellant argued, at trial, that the §§ 13A-5-36 (2) and (6), Code of Alabama 1975, circumstances existed, the trial court did not err in concluding that the evidence failed to support these mitigating circumstances. There was, likewise, no error in the trial court's conclusion that there were no other mitigating circumstances, statutory or otherwise.
Upon further review, we have found no errors adversely affecting appellant's substantial rights, and have determined that this death sentence was not imposed arbitrarily or capriciously. Appellant's crime was properly punishable by death, and we cannot say that her death sentence is not in line with punishment imposed in other cases, considering both the nature and circumstances of the offense, and the character and record of the appellant. Appellant's conviction and death sentence are due to be and are, hereby, affirmed.
AFFIRMED.
All the Judges concur.
[1] The 1966 conviction resulted from another stabbing incident, in which Andrew Hughes was killed.
[2] See Appendix "A".
 APPENDIX A IN THE CIRCUIT COURT OF TUSCALOOSA COUNTY, ALABAMA STATE OF ALABAMA, VS.
PATRICIA ANN THOMS, alias PATRICIA JACKSON, alias PATRICIA ANNE THOMAS JACKSON, DEFENDANT.
 CASE NO. CC-81-865.
FINDINGS OF FACT FROM THE TRIAL AND THE SENTENCE HEARINGS, AND SENTENCE ORDER, AS REQUIRED PURSUANT TO ALA. CODE § 13A-5-33 (SUPP. 1978)
The Defendant, Patricia Ann Thomas, alias, was indicted, tried, and convicted of Murder in the First Degree committed by a Defendant who has been convicted of Murder in the Second Degree in the 20 years preceding the crime, a capital offense.Ala. Code § 13A-5-31 (a)(13) (Supp. 1978). The trial was held pursuant to the procedures required by the Alabama Code andBeck v. State, 396 So.2d 645 (Ala. 1981) [opinion on remand, after rehearing]. After the first stage, guilt-innocence portion of the trial, the jury found the Defendant guilty as charged in the indictment. After the second stage, sentence portion of the trial, the jury fixed the punishment at death. Thereupon, the Court ordered a presentence investigation and report, and set the third stage, non-jury sentencing hearing for December 23, 1981, at 9:00 A.M. Prior to said hearing the Court, the State, and the Defense, were each supplied with a copy of the presentence report. See Gardner v. Florida,430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977). Although both the State and the Defense were offered the opportunity to present evidence in the second and third stage sentence hearings, the case was submitted on the evidence heard in the first stage, and the sentence hearings consisted entirely of arguments of counsel, and the presentence report.
The jury having returned a verdict fixing punishment at death, and the Court having held the third stage hearing mandated by Beck v. State, supra, the Court must weigh the aggravating and mitigating circumstances to determine whether to refuse to accept the death penalty as fixed by the jury or to sentence the Defendant to death. Ala. Code § 13A-5-33 (Supp. 1978). See also Kyzer v. State, 399 So.2d 330, 338 (Ala. 1981):
 "The whole purpose of [the procedure for a sentence hearing before the judge] is to allow for judicial review of a sentence of death fixed by the jury. By providing for a sentencing hearing and by requiring the trial judge to find at least one aggravating circumstance, the legislature obviously intended to give the trial judge authority to review the finding *Page 968 
of the jury and the fixation of punishment at death by the jury to check any arbitrary or capricious exercise of the power of the jury in fixing the penalty." [emphasis in original].
After weighing the aggravating and mitigating circumstances, the Court is unable to find sufficient reason to refuse to accept the death penalty as fixed by the jury, and accordingly accepts the jury verdict and sentences the Defendant Patricia Ann Thomas, alias, to death. Ala. Code § 13A-5-33 (Supp. 1978).
The Court finds beyond a reasonable doubt from the evidence presented that the Defendant Patricia Ann Thomas, alias, did in fact commit the offense of Murder in the First Degree by unlawfully and with malice aforethought killing Bonnie Walker by stabbing her with a knife, and further that within the 20 years preceding the crime, to-wit, November 9, 1966, the Defendant had been convicted of Murder in the Second Degree, as charged in the indictment. The Court further finds beyond a reasonable doubt that at the time of the crime of Murder in the First Degree charged in the indictment, the Defendant previously had been convicted of a felony involving the use or threat of violence to the person, namely Murder in the Second Degree on, to-wit: November 9, 1966. Ala. Code § 13A-5-35 (2) (Supp. 1978).
The evidence is sufficiently clear to lead to a well-guarded and dispassionate judgment beyond a reasonable doubt that the Defendant Patricia Ann Thomas, alias, committed the murder charged by stabbing the deceased, Bonnie Walker, with a knife at a time when the deceased was unarmed.
The Court has undertaken a review of the aggravating and mitigating circumstances, and finds as follows:
Aggravating Circumstances: The State did not attempt to raise any of the statutory aggravating circumstances set forth inAla. Code § 13A-5-35 (1)-(8) (Supp. 1978), except for number (2): "The Defendant was previously convicted of another capital felony or a felony involving the use or threat of violence to the person." That aggravating circumstance, as previously mentioned, was proven beyond a reasonable doubt before both the jury and the trial judge. The Court finds that aggravating circumstance exists and, as did the jury, further finds it sufficient to support the sentence of death.
Mitigating Circumstances: The Court will discuss each mitigating circumstance defined by law, proffered by the defense, or supported by the evidence.
Statutory mitigating circumstances are set forth in Ala. Code
§ 13A-5-36 (1)-(7) (Supp. 1978). They are:
1. "The defendant has no significant history of prior criminal activity." This defendant does have a history of prior criminal activity, and it is significant. The defendant was convicted of Murder in the Second Degree in Case No. 9760-A on November 9, 1966, and sentenced to twelve years imprisonment. The defendant has one conviction of Assaulting a Police Officer, one conviction of Resisting Arrest, seven convictions for disorderly conduct, one conviction of malicious destruction of property, one conviction of leaving the scene of an accident, and several traffic infractions. The Court finds that this mitigating circumstance is not present in this case.
2. "The capital felony was committed while the defendant was under the influence of extreme mental or emotional disturbance." The defense argued this mitigating circumstance was present because under their view of the evidence there were three people arguing, drinking, insulting language being used, and weapons present. The evidence, however, fails to support a finding that the Defendant acted under the influence of extreme mental or emotional disturbance. The victim was unarmed, and the Defendant acted unlawfully and with malice aforethought. The Court finds that this mitigating circumstance is not present in this case.
3-5. "The victim was a participant in the defendant's conduct or consented to the act;" and "The Defendant was an accomplice in the capital felony committed by *Page 969 
another person and his participation was relatively minor;" and "The defendant acted under extreme duress or under the substantial domination of another person." The defense did not argue the presence of any of these three mitigating circumstances, and the evidence fails to support any of the three. The Court finds that none of these three mitigating circumstances is present in this case.
6. "The capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired." The defense argued that the defendant was an alcoholic, thus potentially raising the issue of this mitigating circumstance. The evidence fails to show that the defendant was impaired in any way. The Court finds that this mitigating circumstance is not present in this case.
7. "The age of the defendant at the time of the crime." The defendant was 33 years of age at the time of the murder charged, and her age does not mitigate against the penalty. The Court finds that this mitigating circumstance is not a factor in this case.
Additionally, the jury was instructed that they could consider any aspect of the defendant's background or record and any of the circumstances of the capital offense, and any other mitigating circumstance offered or presented by the evidence which mitigates against the death penalty. The Court has searched the record for such circumstances.
The Defendant is a 33-year-old female with a poor reputation for drinking and fighting. There is nothing in her background or record, nor in the circumstances of the murder itself, nor any other mitigating circumstance offered or presented which mitigates against the death penalty set by the jury.
Therefore, the Court finds that the aggravating circumstance that the defendant was previously convicted of a felony involving the use of violence to the person, [§ 13A-5-35 (2)], Murder in the Second Degree exists in this case and the Court finds it sufficient to support the sentence of death. Ala. Code
§ 13A-5-33 (1) (Supp. 1978). The Court finds no mitigating circumstances present. Ala. Code § 13A-5-33 (2) (Supp. 1978). Therefore, the Court finds no reason to refuse to accept the death penalty as fixed by the jury. Ala. Code § 13A-5-33 (Supp. 1978). The Court finds no arbitrary or capricious exercise of the power of the jury in fixing the penalty. Kyzer v. State,399 So.2d 330, 338 (Ala. 1981). The defense in their closing remarks implied an issue of disparity in sentencing existed, an issue normally addressed to the appellate court's proportionality review. See Beck v. State, supra, at 664. In deference to counsel argument, the Court merely cites Hubbardv. State, 382 So.2d 577 (Ala.Cr.App. 1979), aff'd,382 So.2d 597 (Ala. 1980), the only other case brought in this county pursuant to Ala. Code § 13A-5-31 (a)(13) (Supp. 1978), which resulted in the death penalty being imposed.
This the 28th day of December, 1981.
 s/Joseph A. Colquitt
Joseph A. Colquitt Circuit Judge