**Patricia Ann Thomas JACKSON, Petitioner,**

v.

**Morris THIGPEN, Respondent.**

**Civ. A. No. 87–C–2046–W.**

United States District Court, N.D. Alabama, W.D.

Nov. 30, 1990.

David G. Hymer, Bradley Arant Rose & White, Birmingham, Ala., Hank Hawkins, Tuscaloosa, Ala., for petitioner.

John Gibbs, Don E. Siegelman, Montgomery, Ala., for respondent.

## MEMORANDUM OF OPINION

CLEMON, District Judge.

In this petition for a writ of habeas corpus under 28 U.S.C. § 2254, Patricia Ann Thomas Jackson ("petitioner") urges that her death sentence is constitutionally invalid for four reasons. She maintains that the death sentence was obtained by the unconstitutional use of an earlier crime both as an element of the capital crime and as an aggravating circumstance and that the trial judge impermissibly considered her uncounseled misdemeanor convictions in determining whether she had a significant criminal history. Furthermore, petitioner alleges that the conviction was obtained by the unconstitutional use of peremptory challenges to exclude all blacks from service on the jury that convicted her. Finally, petitioner claims that she was denied the effective assistance of counsel at trial and in sentencing. Finding merit in the latter two grounds, the Court shall grant the petition for habeas corpus.

### I. Procedural Background

A grand jury sitting in Tuscaloosa County, Alabama in July, 1981 returned an indictment[1] charging petitioner with capital murder in violation of Section 13A–5–31(a)(13) of the Alabama Code. Ralph Burroughs, a Tuscaloosa County public defender, and Joel Sokol, a private attorney, were appointed to represent her and on October 30, 1981, she entered pleas of not guilty and not guilty by reason of insanity.

---

1. In pertinent part, the indictment charges as follows:

The Grand Jury of said County charge that before the finding of this Indictment PATRICIA ANNE THOMAS, alias, PATRICIA ANN THOMAS, alias, PATRICIA JACKSON, alias PATRICIA ANNE THOMAS JACKSON, whose name is otherwise unknown to the Grand Jury, did, unlawfully and with malice aforethought kill Bonnie Walker by stabbing her with a knife; after having been convicted of Murder in (sic) Second Degree, in the preceding twenty years, on, to-wit: November 9, 1966, in the Circuit Court of Tuscaloosa County, Alabama, in violation of Section 13A–5–31(13) of the Code of Alabama, against the peace and dignity of the State of Alabama.

On December 16, 1981, petitioner was convicted of capital murder after a three-day trial. At a separate punishment proceeding the jury fixed her punishment at death. The trial judge then conducted an independent evaluation of the jury's sentence and affirmed. He filed a written order embodying his findings of fact and conclusions of law.

On appeal, both the Alabama Court of Criminal Appeals and the Alabama Supreme Court affirmed the findings of the trial judge. *Jackson v. State*, 459 So.2d 963 (Ala.Crim.App.1984); *Ex parte Jackson*, 459 So.2d 969 (Ala.1984). The United States Supreme Court denied certiorari. *Jackson v. Alabama*, 470 U.S. 1034, 105 S.Ct. 1413, 84 L.Ed.2d 796 (1985).

On or about April 23, 1985, Sokol filed a petition for the writ of error *coram nobis* in the trial court. He made numerous attacks on the validity of both the conviction and the sentence. Among other things, Sokol claimed that he and his colleague had been ineffective in many aspects of their representation of petitioner. By letter dated July 2, 1985, Sokol asked the court for permission to withdraw on the basis that he would probably be called as a witness for petitioner in a hearing on the *coram nobis* petition. Thereafter, the petition was amended by attorney Walter Braswell to add an additional ground for the claim that petitioner's trial attorneys had been ineffective.

The trial judge conducted a *coram nobis* evidentiary hearing on October 3, 1985 and, on December 13, 1985, entered a written order denying the petition. The Alabama Court of Criminal Appeals affirmed, *Jackson v. State*, 501 So.2d 542 (Ala.Crim.App. 1986), and the Alabama Supreme Court denied a petition for the writ of certiorari, *Jackson v. State*, No. 86–269 (Ala.1987). The United States Supreme Court once again denied petitioner's request for the writ of certiorari. *Jackson v. Alabama*, 483 U.S. 1010, 107 S.Ct. 3242, 97 L.Ed.2d 746 (1987).

The present *habeas* petition was filed in this court on November 16, 1987, by Hank Hawkins, one of the attorneys who represented the petitioner at both the trial and appellate stages of the *coram nobis* proceedings. By order entered on December 2, 1987, the court appointed Hawkins and David G. Hymer, an attorney practicing in Birmingham, Alabama, to represent petitioner. In an effort to avoid piecemeal litigation of issues that might arise in the federal *habeas* context, the court in that same order required counsel to consult with petitioner regarding all possible *habeas* claims and the judicial disfavor of successive petitions. Additionally, counsel was required to certify that such consultation had taken place, and either amend the petition to include all grounds or certify in writing that all grounds which might entitle the petitioner to relief were included in the original petition. On December 17, 1987, counsel for petitioner filed the required certifications.

After extensive discovery, an evidentiary hearing was conducted by this court on February 23, 1989.

Based on the evidence adduced at that evidentiary hearing, the factual findings of the state courts and the record of the state court proceedings, the Court reaches its conclusion on the ultimate issues.

## II. The Facts
### A. *The Substantive Crime*

Because this Court generally must defer to the state court determinations of factual issues pursuant to 28 U.S.C. § 2254, it adopts the Alabama Court of Criminal Appeal's summary of the evidence presented at trial.

The pertinent fact is that Bonnie Walker was stabbed on her front porch by petitioner on February 28, 1981. It is not clear how the dispute began. Apparently, there had been a lengthy argument between the petitioner and victim over liquor that the former wished to purchase. The argument quickly escalated into a heated exchange of accusations, name-calling and death-threats. Petitioner proceeded to hit the victim in the chest with what seemed a closed fist. Petitioner immediately left the scene while victim disappeared into her house. Moments later, Walker returned to

the porch with a knife in her hand. It was at this time that witnesses first became aware that the victim had been stabbed. While one particular witness attempted to assist her, Walker exclaimed that petitioner "had cut her."

Bonnie Walker died later that day because of a fatal stab wound inflicted by petitioner.

Petitioner denied having any knowledge of the victim's death until the next day. Petitioner maintains that she voluntarily presented herself to law enforcement officials as soon as she became aware of Walker's death. *See Jackson v. State*, 459 So.2d 963, 964–965 (1984).

B. *Peremptory Challenges of Black Jurors*

Petitioner's venire consisted of eighty-six persons—seventy whites and sixteen blacks. Six whites and four blacks were excused for cause, leaving a reduced venire of twelve blacks and sixty-four whites. The prosecutor used his twenty-two peremptory challenges to remove all of the twelve blacks and ten of the whites.

Gerald Hudson, the lead prosecuting attorney, testified that he struck all blacks from petitioner's venire because, in his judgment, black jurors are less willing to give the State a fair trial and are less likely to convict. Hudson also testified that black jurors tend to be more forgiving and more willing to give a defendant a second or third chance than are white jurors.

Credible anecdotal evidence shows that Hudson's opinion of black jurors was universally shared by other assistant district attorneys in Tuscaloosa County. Where a prosecutor was personally acquainted with a black venireperson, that venireperson might not be stricken by the prosecutor. Otherwise, the standard operating procedure of the Tuscaloosa County District Attorney's Office at the time of petitioner's trial was to use the peremptory challenges to strike as many blacks as possible from the venires in cases involving serious crimes.

The statistical evidence confirms that the prosecutor's use of the peremptory challenges at petitioner's trial and prior thereto excluded black citizens from participation in the administration of the criminal justice system.[2] The report of Dr. Chester I. Palmer, Jr., an expert called by respondent, indicates that

... [t]here can be no reasonable doubt that, both in all cases 1981–85 and in Hudson's cases, there was a pattern that blacks were more likely to be subjected to peremptory strikes by the prosecution than were whites on the same venires. On the average, in 1981–85 the prosecution used 2.42 more peremptory strikes on blacks than expected by random selection; in Hudson's cases, the comparable figure is 2.58. * * *

Thus, these analyses indicate that the prosecution was more likely to exercise its peremptory challenges against blacks than against whites on the same venires. As indicated above, it is not possible to determine from the data the extent that effect might have been caused by differences other than race between the pools of blacks and whites on the venires.

Respondent Exhibit (RX) 1, p. 29.

According to Dr. Palmer, the probability is *de minimis* that the disparate use of peremptory challenges against blacks is attributable to chance—less than three out of ten million. Reviewing the same evidence, petitioner's expert, Dr. Robert Sigler, a professor of Criminal Justice, agreed. Dr. Sigler concluded that blacks were systematically excluded from jury service in serious criminal cases by prosecutors who felt that blacks would not convict. The experts were in agreement that 28% fewer blacks served on criminal juries in Tuscaloosa County than would have been expected to serve by random selection; that blacks were underrepresented on 70% of the criminal juries in Tuscaloosa County; and that the Tuscaloosa County District Attorney's Office struck 28% more blacks than would have been expected by random selection. This situation existed at the time of peti-

---

**2.** See discussion, *infra,* § VI, pp. 23–24.

tioner's trial and it continued for the next four years.

The Tuscaloosa County prosecutors also manipulated the trial docket in their effort to preserve the racial purity of criminal juries.[3] Inasmuch as they actually set the criminal trial dockets until 1982, they implemented a scheme in which juries with fewer black venirepersons would be called for the serious cases.

The use of peremptory challenges by the Tuscaloosa County District Attorney's Office effectively resulted in the systematic exclusion of blacks from trial juries in serious criminal cases prior to 1982.[4] In cases involving black defendants and white alleged victims, the exclusion was most notorious. This systematic exclusion of blacks also occurred in cases where both the defendant and the alleged victim were black and resulted in the all-white jury that tried petitioner.

### C. *Effectiveness Vel Non of Counsel*

Ralph Burroughs testified that in his many years of practicing criminal law in Tuscaloosa County, he has never filed a motion attacking the racial composition of juries. He testified, to the astonishment of this court, that in his first few years of practice, the names of black venirepersons were removed by the circuit clerk prior to empanelment. While he served as an assistant district attorney in Tuscaloosa County, he was aware of a "tendency" on the part of young assistant district attorneys to strike black venirepersons. In fact, some of these assistants admitted to him that they always struck the available blacks from the jury venires. He was aware, of course, that the young assistant district attorney in this very case used the state's peremptory challenges to strike all the blacks from the jury that tried his client.

Petitioner, born out of wedlock, only completed seven years of school. Her intelligence level is borderline and, predictably, she was a slow student in school. She gave birth to her first child while in the eighth grade. Her mother was an alcoholic who constantly abused petitioner and her two sisters. When she was seventeen, petitioner stabbed and killed her boyfriend after he slapped her. As was noted by the state court, she pled guilty to second degree murder for this offense. From age seventeen until twenty-one, petitioner was incarcerated in state prison.

Following her mother's death in the early 1970's petitioner became an alcoholic. She finally acknowledged her addiction and made contact with an alcohol treatment center one week before she killed Bonnie Walker.

Petitioner's counsel did not prepare for the sentencing hearing. Burroughs was also lead counsel in the notorious capital case tried just ahead of petitioner's—*Kyzer v. State*.[5] Burroughs devoted most of his time to the Kyzer case because he felt that a conviction in that case would likely result in the death penalty. He considered petitioner's "worst case scenario" as a manslaughter conviction—a view no doubt based upon the consideration that both defendant and victim were black and that the case involved a "shothouse killing." In any event, he believed it unlikely that petitioner would receive the death penalty.

The *Kyzer* jury reached a verdict just before petitioner's trial commenced. Kyzer was spared the death penalty but was instead given two life sentences and 10,000 years imprisonment. *Cf. Kyzer v. State*, 484 So.2d 1202 (Ala.Cr.App.1986). The local media speculated that, notwithstanding the sentence, Kyzer would be eligible for parole in five years. It was in this atmosphere of enraged public hostility that peti-

---

**3.** As of petitioner's trial, there had never been a black prosecutor in Tuscaloosa County.

**4.** Even for the period 1981–85, the State's evidence indicates that the prosecution used 2.42 more peremptory strikes on blacks than expected by random selection. RX 1, p. 29.

**5.** Kyzer earlier had been convicted and sentenced to death for the killing of his ex-wife, her mother, and another person. The conviction was reversed and a new trial ordered in 1981. *Ex parte Kyzer*, 399 So.2d 330 (Ala.1981).

tioner was convicted and sentenced to death.

Roughly one hour after her conviction, petitioner and her counsel appeared before the jury again for the sentencing hearing. Burroughs testified at the *habeas* hearing that he told the trial judge that the verdict was so shocking to him that he was not prepared to go forward with sentencing.

Between the time of petitioner's indictment and sentencing, her lawyers did no work on the sentencing aspects of her case. Burroughs testified to this Court that Sokol's responsibility was to concentrate on the sentencing hearing if such hearing became necessary. Sokol testified at the *coram nobis* hearing that "[i]t was my impression and remains my impression that the bulk of the responsibility for ... the punishment hearing would rest with [Burrough's] office as far as preparing and whatever was going to be presented at that time." R. IV, p. 19. Other than considering the issue of whether petitioner should testify, Sokol testified that he "... did not in any way prepare or help prepare for any presentation of the evidence at the sentencing hearing." R. IV, p. 20.

No social history of petitioner was undertaken prior to either of the sentencing hearings. No family members or friends were contacted and informed of either the sentencing hearing held before the jury or the trial judge. Therefore, no evidence of mitigation was adduced.

Petitioner's alcoholism, the abuse that she suffered as a child, her limited intelligence, and the circumstances surrounding the killing of her boyfriend all bear upon the mitigating factors of whether petitioner was substantially impaired in her capacity to appreciate the criminality of her conduct or to conform her conduct to the requirements of law. *Cf. Ala.Code,* § 13A–5–33(2).

### III. Claims Presented To State Court On Direct Appeal And Their Disposition

On direct appeal, to the Alabama Court of Criminal Appeals, petitioner was represented by the same attorneys who represented her at trial. Petitioner made but three claims: (1) the trial court erred in permitting the prosecution to place her 1966 murder conviction in evidence because she had offered proof that her attorney in that case had not advised her of the right to appeal; (2) the action of the Alabama Supreme Court in revising the Alabama death penalty statute after the decision of the United States Supreme Court in *Beck v. Alabama,* 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980), violated the separation of powers doctrine; and (3) the death sentence was constitutionally disproportionate to the crime for which she was convicted.

With respect to petitioner's challenge to the use of the 1966 murder conviction, the Court, in an opinion by Judge Harris, held that the 1966 conviction was valid and that it was properly used at her capital murder trial.

The appellant objected at trial and argues on appeal that her 1966 conviction was not a valid conviction because she was not informed, at that time, by counsel or the trial court, that she had a right to appeal the conviction. This issue has been decided against the appellant in a recent proceeding on her petition for writ of error coram nobis seeking relief from the 1966 conviction, and has been affirmed by us on appeal. *See, Jackson v. State,* 446 So.2d 691 (Ala.Crim.App.1983). The trial court's findings at the hearing of the petition for writ of error coram nobis are set out in detail in *Jackson v. State, supra.* As explained, herein, faced in 1966 with a capital charge of first-degree murder and in order to avoid a possible death sentence, the appellant made an agreement to accept a sentence of twelve years' imprisonment in exchange for what was, in effect, a plea of guilty to second-degree murder. The trial court concluded that all parties, including the appellant, herself, agreed to the negotiated "settlement" reached in the 1966 case. The trial court found that appellant's testimony at the coram nobis hearing, that she did not agree with the "settlement" in 1966 and that no one informed her of her right to appeal, was not credible in light of other evidence.

The trial court further concluded that the appellant was adequately represented by counsel in the 1966 case, that her best interests were properly considered.

The validity of the 1966 conviction was, therefore, upheld by the "coram nobis" trial court. On appeal we affirmed the trial court's conclusion that the 1966 conviction was valid. *See, Jackson v. State, supra.* The appellant has presented nothing further on this appeal, and we have found no evidence in the record, to convince us otherwise. The prior conviction was properly proven at the trial below, and, in fact, was admitted by the appellant on cross-examination. (Footnotes omitted.)

459 So.2d at 965–966.

As to petitioner's claim that the Alabama Supreme Court usurped the prerogatives of the Alabama Legislature by revising Alabama's death penalty procedures, the court merely noted that settled case law had resolved the issued against her. *See, Clisby v. State,* 456 So.2d 86 (Ala.Crim.App. 1982), *aff'd in part, rev'd in part and remanded on other grounds,* 456 So.2d 95 (Ala.1983).

The court reviewed the trial court's consideration of aggravating and mitigating circumstances and concluded that the death penalty was appropriate in petitioner's case.

Petitioner requested and was denied a rehearing by the Court on the claim that petitioner's 1966 conviction was invalid.

Petitioner's attorneys applied to the Alabama Supreme Court for the writ of certiorari claiming that (1) the 1966 murder conviction was invalid because petitioner was not advised of her right to appeal, and (2) the trial court erred both in its failure to find any mitigating factors and by using the prior murder conviction as "both an aggravating [sic] circumstance and as a bar to a mitigating circumstance." That court granted certiorari and affirmed. *Ex parte Jackson,* 459 So.2d 969 (Ala.1984). The United States Supreme Court denied certiorari. *Jackson v. Alabama,* 470 U.S. 1034, 105 S.Ct. 1413, 84 L.Ed.2d 796 (1985).

## IV. Dual Use of Single Felony Conviction

■ The first ground of petitioner's *habeas* petition is that the use of a single felony conviction both as an element of the capital murder charge and as an aggravating factor to impose the death penalty violates her due process rights under the Fifth and Fourteenth Amendments to the United States Constitution. Petitioner also claims that such dual use was not permitted under Alabama law at the time that she committed the murder for which she now stands convicted. Moreover, petitioner alleges that she was not fairly warned that her conduct might subject her to the imposition of the death penalty. She states, and the record supports her claim, that it was not until six days after her crime that a decision of the Alabama Supreme Court, *Ex Parte Kyzer,* 399 So.2d 330 (Ala.1981), definitively construed the existing death penalty statute to permit the procedure that was used in her case. This particular claim was not raised at trial or on direct appeal. It was in her *coram nobis* petition that petitioner raised this issue for the first time. The trial court refused to consider the substantive claim, finding that it had been procedurally waived by adequate counsel. The Court of Appeals agreed that the claim was procedurally barred, although it also addressed the merits of the claim.[6] Thus, it is far from clear that the state court actually enforced a procedural

---

6. Jackson contends that the rule of *Keller v. State,* 380 So.2d 926 (Ala.Cr.App.1979), *cert. denied,* 380 So.2d 938 (Ala.1979), that the aggravating component of the capital crime could not also supply an aggravating circumstance, should apply because her conviction occurred before the decision in *Ex parte Kyzer,* 399 So.2d 330 (Ala.1981), which effectively overruled *Keller.* That contention was rejected in *Kennedy v. State,* 472 So.2d 1092 (Ala. Cr.App.1984), affirmed, *Ex parte Kennedy,* 472 So.2d 1106, 1108–09 (Ala.1985), *cert. denied, Kennedy v. Alabama,,* 474 U.S. 975, 106 S.Ct. 340, 88 L.Ed.2d 325 (1985). "[T]he constitutional prohibition against state enactment of ex post facto laws is, 'as its terms indicate, directed against legislative action only, and does not reach erroneous or inconsistent decisions by the court.'" *Kennedy,* 472 So.2d at 1109 (emphasis in original).

*Jackson v. State,* 501 So.2d at 544.

waiver rule. "If the state does not clearly announce the procedural rule or the state courts do not strictly ... follow [it], then the federal courts may reach the issue the state court refused to address." (citations omitted) *Wheat v. Thigpen*, 793 F.2d 621, 625 (5th Cir.1986), *cert. denied*, 480 U.S. 930, 107 S.Ct. 1566, 94 L.Ed.2d 759 (1987). Regardless of whether there was a procedural waiver that was enforced by the Alabama courts, this court is convinced that petitioner is not entitled to prevail on the merits of her due process claim here.

In point of fact, *Kyzer* neither criminalized previously innocent conduct nor provided for greater punishment for conduct that was already punishable. The Alabama Court of Criminal Appeals misconstrued the decision in *Cook v. State*, 369 So.2d 1251 (Ala.1979) in reaching its conclusion that no single fact could be both an element of a capital felony and support for an aggravating circumstance. The decision in *Kyzer* had been virtually assured when the Alabama Supreme Court decided *Beck v. State*, 396 So.2d 645 (Ala.1980). In the *Beck* decision rendered on December 19, 1980, more than two months before petitioner killed Bonnie Walker, the court held that

> [i]n Alabama, the aggravating circumstances constitute an element of the capital offense and are required to be "averred in the indictment" (Code 1975, § 13–11–2), and must be proved beyond a reasonable doubt. Consequently, the jury verdict that the defendant was guilty of committing the capital offense would mean that the State had already established at least one aggravating cir-

cumstance, even though the legislature did not include an aggravating circumstance in § 13–11–6 to correspond with the "aggravation" made a part of each capital offense by § 13–11–2(a). In addition, the State would be permitted to offer evidence of any other aggravating circumstance contained in § 13–11–6, which was not "averred in the indictment" but which was proved beyond a reasonable doubt at trial or by the evidence taken at the sentencing hearing.

396 So.2d at 663.   (emphasis supplied).

Additionally, the Alabama Supreme Court has, though not faced with the issue presented here, allowed death sentences to stand where a single act supported both an element of the offense and an aggravating factor.[7]

Given the Alabama Supreme Court's prior treatment of the issue, it is doubtful that the rule announced by the Court of Criminal Appeals in *Keller* was ever the law in Alabama. It certainly was not Alabama law after the Supreme Court decision in *Beck*.

The *Kyzer* decision did not make any substantive change in Alabama law regarding the dual use of a single prior criminal act and that result should have been anticipated. Thus, petitioner was not denied fair notice. Because petitioner committed a capital offense after having been convicted of second degree murder, she is subject to the death penalty and her prior crime would be used as an aggravating circumstance to support a death sentence. Accordingly, her right to due process under

---

7. *See, e.g., Baldwin v. State*, 372 So.2d 26, (Ala. Crim.App.1978), *aff'd*, 372 So.2d 32 (Ala.1979), *vacated on other grounds*, 448 U.S. 903, 100 S.Ct. 3043, 65 L.Ed.2d 1133 (1980); *Beck v. State*, 365 So.2d 985 (Ala.Crim.App.), *aff'd*, 365 So.2d 1006 (Ala.1978), *rev'd on other grounds*, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980); *Coon v. State*, 380 So.2d 980 (Ala.Crim.App.1979), *aff'd*, 380 So.2d 990 (Ala.1980), *vacated on other grounds*, 449 U.S. 810, 101 S.Ct. 58, 66 L.Ed.2d 14 (1980); *Evans v. State*, 361 So.2d 654 (Ala. Crim.App.1977), *aff'd in part, rev'd in part and remanded on other grounds*, 361 So.2d 666 (Ala. 1978), *cert. denied*, 440 U.S. 930, 99 S.Ct. 1267, 59 L.Ed.2d 486 (1979); *Horsley v. State*, 374 So.2d 363 (Ala.Crim.App.1978), *aff'd*, 374 So.2d

375 (Ala.1979), *vacated on other grounds*, 448 U.S. 903, 100 S.Ct. 3043, 65 L.Ed.2d 1133 (1980); *Jacobs v. State*, 361 So.2d 607 (Ala.Crim.App. 1977), *aff'd*, 361 So.2d 640 (Ala.1978), *cert denied*, 439 U.S. 1122, 99 S.Ct. 1034, 59 L.Ed.2d 83 (1979); *Evans v. State*, 361 So.2d 654 (Ala.Crim. App.1977), *aff'd in part, rev'd in part and remanded on unrelated grounds*, 361 So.2d 666 (Ala.1978), *aff'd after remand, sub nom. Ex parte Ritter*, 375 So.2d 270 (Ala.1979), *vacated on other grounds*, 448 U.S. 903, 100 S.Ct. 3044, 65 L.Ed.2d 1133 (1980); *Thomas v. State*, 373 So.2d 1149 (Ala.Crim.App.), *aff'd* 373 So.2d 1167 (Ala.1979), *vacated on other grounds*, 448 U.S. 903, 100 S.Ct. 3043, 65 L.Ed.2d 1133 (1980).

the Fifth and Fourteenth Amendment was not violated.

■ Petitioner's claim that the dual use of the 1966 murder conviction permitted the arbitrary and capricious imposition of the death penalty is foreclosed by *Lowenfield v. Phelps*, 484 U.S. 231, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988). In that case, the United States Supreme Court held that the Eighth Amendment is not violated where an aggravating circumstance duplicates an element of the underlying capital felony.[8]

The court finds petitioner's attorneys were not ineffective counsel because of their failure to object to the dual use of her 1966 murder conviction. As discussed above, such an objection would have been meritless.

## V. Use of Uncounseled Misdemeanors Convictions In Sentencing

■ The second ground of petitioner's *habeas* petition is that the trial judge impermissibly relied on uncounseled misdemeanor convictions in sentencing. This claim was neither raised at trial nor on direct appeal. However it was raised and considered by the state trial judge in the *coram nobis* proceeding.

Under Alabama law, it is a mitigating circumstance in a capital case that "[t]he defendant has no significant history of prior criminal activity." *Ala. Code,* § 13A–5–36(1) (1975). In reviewing the jury's sentence of death, the trial judge found that,

[t]his defendant does have a history of prior criminal activity, and it is significant. The defendant was convicted of Murder in the Second Degree ... [in] 1966, and sentenced to 12 years imprisonment. The defendant has one conviction of Assaulting a Police Officer, one conviction of Resisting Arrest, seven convictions for disorderly conduct, one conviction of malicious destruction of property,

one conviction of leaving the scene of an accident, and several traffic infractions. *Jackson v. State*, 459 So.2d 963, 968 (1984). Based on these findings, the trial court concluded that the mitigating circumstance of lack of significant history of prior criminal activity was not present. Although there was no showing that petitioner was represented by counsel at the time of these convictions, there was no objection by her counsel to consideration of these misdemeanors.

Assuming that consideration of the uncounseled misdemeanor convictions was improper, and ineffective counsel is the cause for petitioner's failure to raise this claim earlier, petitioner has not shown that she suffered any degree of prejudice.[9] The trial judge found that "[e]ven if petitioner's trial counsel had objected to and kept out any evidence of offenses other than the 1966 murder, petitioner would still have had a significant criminal history." *Jackson v. State*, No. 81–865.60 (Cir. Tuscaloosa County, Ala. Dec. 13, 1985) (order denying petition for writ of error *coram nobis*). He further found that the 1966 murder "is a much more serious offense than all of the others [i.e., the misdemeanors] combined." *Id.* Under these circumstances, this court must concur in this finding with respect to consideration *vel non* of the uncounseled misdemeanors at the sentencing review. In particular, "[p]etitioner has not met her burden of proving that 'but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* (quoting *Strickland v. Washington, infra,* 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984).

## VI. Evaluation of Peremptory Challenges and Ineffective Assistance Claims

■ Petitioner never presented the claim in state court that the prosecution unconstitutionally used its peremptory challenges to remove all black venirepersons from her

---

**8.** The application of *Lowenfield* to this case does not offend due process. The rationale of that decision was foretold more than a decade earlier in *Jurek v. Texas,* 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976), in that the United States

Supreme Court approved a death penalty statute which did not specify any aggravating factors apart from the description of the offense itself.

**9.** See discussion *infra,* § VI, p. 23.

jury. She additionally never claimed in a state forum that her counsel were ineffective because they failed to raise and preserve the issue.[10] Petitioner thereby procedurally defaulted on the first claim and it is arguable that she defaulted on the latter. Relief may be granted on procedurally defaulted claims only if a petitioner can demonstrate legally sufficient *cause* for the default and actual *prejudice* resulting from the constitutional violation. *Murray v. Carrier,* 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). Petitioner must shoulder the burden to establish the need for an evidentiary hearing on the cause and prejudice issues. *Williams v. Griswald,* 743 F.2d 1533 (11th Cir.1984); *Birt v. Montgomery,* 725 F.2d 587, 591 (11th Cir.) *en banc, cert. denied,* 469 U.S. 874, 105 S.Ct. 232, 83 L.Ed.2d 161 (1984).

Because the merits of these factual disputes were not resolved in the state court proceedings, material facts bearing on these issues were not adequately developed in the state court proceedings, and petitioner did not deliberately by-pass the state court on these claims, she established the need for the evidentiary hearing held by the court. *See* 28 U.S.C. § 2254(a).

In the landmark case, *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the United States Court held that a criminal defendant may make a *prima facie* showing of racial discrimination in the selection of the jury based solely upon the prosecutor's use of peremptory challenges at his own trial. Once a *prima facie* showing has been made, the prosecution must then shoulder the burden to "come forward with a neutral explanation for challenging black jurors." 476 U.S. at 97, 106 S.Ct. at 1723.

However, in *Allen v. Hardy,* 478 U.S. 255, 106 S.Ct. 2878, 92 L.Ed.2d 199 (1986), the court held that the rule of *Batson*

would not be applied retroactively. Since the decision in petitioner's direct appeal was rendered by the Alabama Supreme Court on September 7, 1984, and rehearing was denied on November 9, 1984, the *Batson* rule is not applicable here. Petitioner's challenge to the discriminatory utilization of peremptory challenges at her trial must instead be based on the pre-*Batson* standard enunciated in *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965).

In *Swain,* the Supreme Court observed that

> [w]hen the prosecutor in a county, in case after case, whatever the circumstances, whatever the crime and whoever the defendant or the victim may be, is responsible for the removal of Negroes who have been selected as qualified jurors by the jury commissioners and who have survived challenges for cause, with the result that no Negroes ever serve on petit juries, the Fourteenth Amendment claim takes on added significance.... Such proof might support a reasonable inference that Negroes are excluded from juries for reasons wholly unrelated to the outcome of the particular case on trial and that the peremptory system is being used to deny the Negro the same right and opportunity to participate in the administration of justice enjoyed by the white population. These ends the peremptory challenge is not designed to facilitate or justify.

*Swain,* 380 U.S. at 223–24, 85 S.Ct. at 837–38.

The Eleventh Circuit has noted that "the Supreme Court has never stated the elements of a prima facie case under *Swain.*" *Willis v. Zant,* 720 F.2d 1212, 1220 (11th Cir.1983), *cert. denied,* 467 U.S. 1256, 104 S.Ct. 3546, 82 L.Ed.2d 849 (1984).[11]

---

**10.** The record is clear that petitioner raised the ineffective assistance claim in her *coram nobis* petition, albeit on other bases. A federal *habeas* petitioner is not required to present in state court *every* basis for a claim that counsel is ineffective. *Brand v. Lewis,* 784 F.2d 1515 (11th Cir.1986).

**11.** In footnote 18 of *Zant,* the Court indicated that the "specific facts" required for a *prima facie* violation may be established through direct evidence, such as testimony, or indirect evidence, such as statistical proof. *Id,* at 1220. More recently, the circuit held that "the testimony of six criminal attorneys practicing in [the area] whose experience spanned two and one-half years to fourteen years" was alone suffi-

In *Zant*, the Eleventh Circuit set forth the two elements of a prima facie case under *Swain:*

> At his evidentiary hearing, petitioner must prove on specific facts that [the prosecutor] had a systematic *and intentional* practice of excluding blacks from traverse juries in criminal trials through the exercise of peremptory challenges, and that this practice continued unabated in petitioner's trial. The exclusion must have occurred "in case after case, whatever the circumstances, whatever the crime and whoever the defendany may be." *Swain*, 380 U.S. at 223; 85 S.Ct. at 837. Petitioner is not required to show that the prosecutor *always* struck *every* black venireman offered to him, *Pearson*, 448 F.2d at 1217, but the facts must manifestly show an intent on the part of the prosecutor to disenfranchise blacks from traverse juries in criminal trials in his circuit, "to deny the Negro the same right and opportunity to participate in the administration of justice enjoyed by the white population." *Swain*, 380 U.S. at 224; 85 S.Ct. at 838. The prosecutor's use of peremptory challenges in only a few trials is clearly insufficient to state a prima facie case, as would be a pattern of exclusion which occurred for only a few weeks. In short, petitioner must marshall enough historical proof to overcome the presumption of propriety in which *Swain* clothes peremptory challenges, and thereby show [the prosecutor's] intent to discriminate invidiously.

720 F.2d at 1220.

Petitioner contends that the cause of her failure to raise the *Swain* issue in the state court, and of her failure to adduce mitigating evidence at the sentencing phase, is ineffective counsel. Petitioner is entitled to "the effective assistance of counsel" under the sixth amendment to the United States Constitution. The standard for determining an ineffective assistance claim was articulated by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984):

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687, 104 S.Ct. at 2064.

The standard of proof required in ineffective assistance of counsel cases is one of "reasonableness under the prevailing professional norms: the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." *Id.* In assessing the actions or omissions relied upon by the petitioner claiming ineffective assistance, the court must determine whether they fall "outside the wide range of professionally competent assistance;" therefore "[c]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690, 104 S.Ct. at 2066.

## VII. Cause and Prejudice

Giving full effect to the presumption of adequacy, and with due regard for the otherwise sterling reputation and record of petitioner's trial counsel, the Court unhesitatingly concludes in this case that petitioner did not receive her constitutional entitlement to adequate counsel at trial and sentencing.

---

cient to establish a prima facie violation of *Swain. Jones v. Davis,* 835 F.2d 835 (11th Cir. 1988). A stronger case could have been established by researching the court records to prove statistically the observations of the six witnesses. The court noted, however, that statistical evidence is not necessary. *Id* at 840 (Citing *Zant, supra.*

Faced with two capital trials back-to-back, Burroughs apparently prepared for and tried the first one in an exemplary fashion—his client was spared the death penalty after having received it in his first trial. Unfortunately, petitioner's case was viewed and treated by said counsel as a vastly less important, albeit serious case. At the onset of petitioner's trial, when they clearly should have challenged the prosecutor's intentional and racially-motivated utilization of peremptory challenge to exclude *all* blacks from the jury chosen to try their black client, petitioner's counsel inexplicably failed to do so. This failure was not a studied, tactical or strategic decision. It did not fall within the wide range of professionally competent assistance. It was not a reasonable exercise of professional judgment. This inaction was an omission so serious as to deprive petitioner of her right to a fair trial, a trial whose result is reliable.

On the facts adduced at the *habeas* hearing, it is clear that had the *Swain* issue been raised and preserved, petitioner would have prevailed on it. The anecdotal and statistical evidence, coupled with a lack of any credible rebuttal evidence, would have compelled a conclusion that the *Swain* burden of proof had been met.[12]

Petitioner has therefore shown actual prejudice from the failure to raise and preserve the *Swain* issue at trial and on direct appeal.

Moreover, petitioner's counsel inexplicably failed to anticipate the very likely event of petitioner's conviction. Counsel did not seriously recognize the certainty that the jury, if it convicted petitioner would decide, almost immediately after pronouncing guilt, whether she would live or die. Consequently, a social investigation was never conducted and petitioner's family was not notified of the sentencing. The failure on counsel's part to take either of these actions effectively resulted in an inability to adduce any mitigating evidence at the sentencing phase. Under these circumstances, counsel's failure to investigate and present

mitigating evidence fell below an objective standard of reasonableness under prevailing professional norms. *Thomas v. Kemp*, 796 F.2d 1322 (11th Cir.1986). Petitioner has shown actual prejudice arising from the ineffectiveness of counsel at the punishment phase of her trial.

Conclusion

The prosecutor's use of peremptory challenges served effectively to exclude blacks from jury service in serious criminal cases in Tuscaloosa County, Alabama at the time of petitioner's trial and prior thereto. Consequently, petitioner has been denied her right of equal protection. She has been denied the right to the effective assistance of counsel at both the guilt and sentencing phases of her trial. Accordingly, the petition for *habeas corpus* is GRANTED, and the conviction and sentence of petitioner is SET ASIDE, without prejudice to the right of the State of Alabama to re-try petitioner for the offense charged in the indictment.

---

**12.** The state has proffered no justification, explanation, or excuse for the policy of excluding black venirepersons from jury service in serious criminal cases arising in Tuscaloosa County.